Richard E. KEISTER, Jr., Private (E–2),
Petitioner,

v.

The Honorable Stanley RESOR, Secretary of the Army

and

Commanding Officer, First United States Army, Fort George G. Meade, Maryland

and

Commanding Officer, 1185th USAR Staging Station, 1135 Ranck Mills Road, Lancaster, Pa., Respondents.

Civ. A. No. 71–646.

United States District Court,
E. D. Pennsylvania.

Sept. 30, 1971.

**205**

Arinson & Anderson, Philadelphia, Pa., for plaintiff.

Warren D. Mulloy, U. S. Atty., Philadelphia, Pa., for defendants.

## OPINION

DITTER, District Judge.

In this case petitioner seeks release from an involuntary call to active duty with the military.

Petitioner, Richard E. Keister, Jr., is a member of the U. S. Army Reserve. On July 25, 1970, he reported to Camp Drum, New York, for a two-week period of active duty for training. By his own admission, Private Keister became intoxicated and left Camp Drum on August 1, 1970, six days before his training duty was to end. The Army reported him as AWOL as of August 3, 1970. Under military regulations, absence from training duty is excused only if a satisfactory reason is presented within 14 days.[1] Petitioner claims that some time in August he *orally* informed one of the officers of his reserve unit that he had not completed the training period because of alleged psychiatric problems.

Petitioner's absence not having been excused, on September 8, 1970, his commanding officer certified him as an unsatisfactory participant in the Army Reserves and requested that petitioner be ordered to active duty under provisions of Army Regulation 135–91. By letter dated September 16, 1970, Keister stated he was appealing his commanding officer's action. He also asked to be discharged because of psychiatric problems. This letter, which had no supporting certificates or affidavits, was not delivered within the 14 days allowed to submit an excuse but was more than 30 days late. On or shortly after November 27, 1970, petitioner was notified that he would be ordered to active duty and that he had the right to appeal within 15 days. On December 8, 1970, he did appeal, referring to his letter of September 16, 1970, to state his excuse for failure to complete training duty and enclosing a psychiatric report dated September 28, 1970.

On December 22, 1970, Keister's orders to active duty were issued requiring service of 17 months and seven days

---

1. The normal course of events in such situations is the absence, the submision of an excuse supported by affidavits or a doctor's certificate within 14 days, and the commanding officer's decision to grant or deny an excuse. In the event of a denial, the reservist is certified as an "unsatisfactory participant" and orders to active duty are requested. • After the administrative work is completed, the reservist is notified and given 15 days to appeal his activation. If he appeals, a "Delay Appeal Board" considers his record and purported excuse. This board makes recommendations to higher authority which may or may not accept them. If the appeal is ultimately denied, the Army proceeds to activate the reservist: Army Regulation 135–91, which is issued under authority of 10 U.S.C. § 673(b). Activation is authorized under 10 U.S.C. § 673(a).

(the period which, when added to his previous active service, would total 24 months). On March 12, 1971, the Army's Delay Appeal Board denied his appeal and on March 19, 1971, Keister's attorney filed the instant petition. Private Keister has not yet started his active duty since his reporting date has been stayed until a ruling is made in this matter.

■ Keister contends that he is eligible for discharge and therefore the Army should release him. In addition, he maintains that he was denied due process by the procedures followed by the Army to activate him. Although it is well established that federal courts will not overturn discretionary determinations made by the military within its jurisdiction,[2] such decisions must follow the applicable regulations [3] of the service involved and may not violate the provisions of the Constitution.

## I. Eligibility for Discharge

First, Keister contends that a reservist who is found to be an unsatisfactory participant must be discharged *prior* to entering active duty if eligible for release by reason of psychiatric problems. The Army on the other hand maintains that Keister's eligibility can only be determined *after* psychiatric evaluation which will be conducted as part of petitioner's induction examination.

■ Department of Defense Directive 1215.13 provides that those reservists who do not maintain satisfactory participation in the activities of their units may be ordered to active duty.

Paragraph IV C 1 states as an exception to the activation of unsatisfactory participants that ". . . individuals eligible for discharge from the reserve components for dependency, hardship or other cogent reasons authorized by regulations of the Military Department concerned will, upon application be discharged." The key word is "eligible". Here, the "Military Department concerned," the U. S. Army, has yet to decide whether Keister is *eligible* for discharge or not. Under the directive, the Army has the decision in the first instance.

■ Petitioner claims that he has established a *prima facie* case of eligibility for discharge by reason of his own statements and the reports of two psychiatrists. I do not agree. In the first place, Keister is obviously not qualified to evaluate his own condition and give an expert opinion. Secondly, there is nothing to indicate that his doctors were applying Army standards in their evaluation of his mental status.

■ One of the petitioner's doctors, Robert L. Sadoff, M.D., states in his Psychiatric Report re Richard Keister, dated September 28, 1970:

*Mental Status Examination* reveals Richard to be an average size male who appears his stated age and presents his difficulties in a clear and relevant manner, without evidence of psychotic thought disorder, hallucinations or delusions. He is well oriented and his memory is not impaired. He is moderately anxious during the interview and shows great concern for himself, his future and his mental

2. See, e. g., Orloff v. Willoughby, 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1953); Bluth v. Laird, 435 F.2d 1065 (4th Cir. 1970); Byrne v. Resor, 412 F.2d 774 (3d Cir. 1969); Smith v. Resor, 406 F.2d 141 (2nd Cir. 1969); United States ex rel. Schonbrun v. Commanding Officer, 403 F.2d 371 (2nd Cir. 1968), cert. denied, 394 U.S. 929, 89 S.Ct. 1195, 22 L.Ed.2d 460 (1969); Fox v. Brown, 402 F.2d 837 (2nd Cir. 1968), cert. denied, 394 U.S. 938, 89 S.Ct. 1219, 22 L.Ed.2d 471

(1969); Morse v. Boswell, 289 F.Supp. 812 (D.Md.), aff'd, 401 F.2d 544 (4th Cir. 1968), cert. denied, 393 U.S. 1052, 89 S.Ct. 687, 21 L.Ed.2d 694 (1969); Winters v. United States, 281 F.Supp. 289 (E.D.N.Y.) aff'd, 390 F.2d 879 (2nd Cir.) cert. denied, 393 U.S. 896, 89 S.Ct. 188, 21 L.Ed.2d 177 (1968).

3. See e. g., Bluth v. Laird, 435 F.2d 1065 (4th Cir. 1970); Smith v. Resor, 406 F.2d 141 (2nd Cir. 1969).

state. He is mildly depressed and motivated for psychiatric treatment of his difficulties.

He then says immediately following in the Diagnostic Impression:

Acute and chronic anxiety reaction, with depressive features, originating several years ago, but aggravated recently by military stress.

Doctor Sadoff repeats this impression in a letter dated February 2, 1971, but then adds: "He appears to be free of psychosis, but quite anxious and nervous." A report by Doctor Morgan, who examined Keister on April 19, 1971,[4] restates Doctor Sadoff's opinion and goes on to say that he (Dr. Morgan) does not believe Keister will become an "acceptable" soldier and that rehabilitation is a waste of money. However, neither doctor's report indicates any familiarity with the criteria used by the Army to judge a man's psychiatric condition, the application of such criteria, or a decision based thereon. Therefore, these reports do not establish eligibility for discharge or anything else,[5] and in any event, the Army is not required to accept a civilian doctor's opinion: Byrne v. Resor, 412 F.2d 774, 775 (3rd Cir. 1969)

At my request, Keister was examined by an Army doctor shortly after the present petition was filed to see if there were any psychiatric problems which were so apparent that discharge would immediately be ordered. Such was not the case. Keister now complains that his interview with the doctor was too brief and that he applied the wrong standards. Petitioner contends that he should be evaluated under the Army's "procurement standards" but that the doctor considered him on the basis of its "retention standards."

Since this examination was made at my request and was not intended to affect the rights of either party, there is no merit in this contention.

I construe Department of Defense Directive 1215.13, which is applicable in this case, to authorize the Army to evaluate petitioner's complete mental and physical condition before deciding whether or not he is eligible for discharge. The most appropriate place to conduct the necessary examination will be at the reception station for entry upon active duty, and I can only assume such reception stations are thoroughly familiar with the standards to be applied to Private Keister.

In what amounts to another argument as to his eligibility for discharge, petitioner contends that since his commanding officer did not *immediately* forward the request for discharge contained in Keister's letter of September 16, 1970, as prescribed by Army Regulation 135-91 18(e), and since none of the higher military authorities have acted favorably upon it, the Army has violated its own regulations. The letter of September 16, 1970, attempted to excuse his failure to complete training and it requested a discharge. The record shows, however, that this letter was forwarded during the Army's administrative preparation to handle Keister's appeal and was considered by the Delay Appeal Board.[6] Thus, there is no support for this allegation.

Keister also complains that the procedures for his being called to active duty were not halted when he made his request for discharge. However, I know of nothing which would justify the conclusion that until any question concerning petitioner's eligibility for discharge

4. Dr. Morgan did not examine Keister until after the Delay Appeal Board had met and denied petitioner's appeal. Apparently the report was submitted to me to persuade me that the Board should be reversed. Obviously, the question is not whether I would reach the same decision as the Board reached, but whether its findings were justified and whether there

has been compliance with applicable regulations.

5. It should also be noted in passing that Keister is the service manager of an automobile dealership. Ordinarily this is quite a responsible position.

6. See the findings of the Delay Appeal Board, infra.

was settled (and litigated), the procedures for activation had to be suspended.

## II. Due Process Requirements as to a Hearing

■ Petitioner contends that since he was not afforded a hearing before the Delay Appeal Board he was denied due process under Army Regulations. He bases this assertion on Army Regulation 135–91 part of which deals with the activation of reservists for unsatisfactory performance. He also refers to Army Regulation 15–6 which prescribes the operation of investigatory boards.

Formerly, paragraph 20e of Regulation 135–91 stated that the procedures set forth in Regulation 15–6 would be followed as to appeals from a reservist's activation. However, on November 24, 1970, a few days before Keister was notified that he would be called to active duty, Regulation 135–91 was changed, the provision for a hearing was removed, and the applicability of Regulation 15–6 eliminated.[7]

Keister's contention that he is entitled to a hearing by reason of Regulation 15-6 despite the provisions of Regulation 135–91 is answered by the former's first paragraph:

. . . Generally this regulation is supplemental to such specific regulations and, in addition, will govern in the investigation of matters not covered in specific regulations . . . In case of conflict between this regulation and a pertinent specific regulation, however, the latter will govern.

Regulation 135–91 is specific and Regulation 15–6 is general. Therefore, the provision on which Keister relies is not applicable to this case.

■ Petitioner also claims a right to a hearing under the Due Process Clause of the United States Constitution citing United States v. Crownfield, 439 F.2d 839 (3rd Cir. 1971) and Scott v. Commanding Officer, 431 F.2d 1132 (3rd Cir. 1970). However, these cases are not applicable. They deal with appeals within the selective service system and not within the military itself where the review is much more limited.[8] He further cites Schatten v. United States, 419 F.2d 187 (6th Cir. 1969), where there was no appeal allowed at all. Here, petitioner was allowed to appeal.

Constitutional questions were also raised in O'Mara v. Zebrowski, 447 F.2d 1085 (3rd Cir. 1971). In that case, Judge Van Dusen said:

The procedure of Army Reg. 135–91 unquestionably could be improved. Determinations of a rather summary character which substantially affect individuals are, however, an everyday occurrence in the military. It is not our function to decide what is best for enlisted reservists. The challenged procedure does permit a reservist to take the matter up with his unit commander, and it also permits an appeal in which the reservist has an opportunity to "explain those facts pertinent to his case which he feels were not fully considered, and . . . include any additional appropriate evidence. . . . " Army Reg. 135–91(20)(a). Given the factual context in which this procedure operates, and the presumption of constitutionality that attaches to this statutorily authorized

---

7. "2. In order to clarify the policy, paragraph 20e, AR 135–91, will be amended by printed change to read as follows:

'e. *Appeal Board.* The Commanding Officer, US Army Reserve Components Personnel Center, will convene an appeal board to determine findings and submit recommendations to him on denials of appeal of involuntary order to active duty submitted under this regulation. The board proceedings will be as pre-scribed by the Commanding Officer, US Army Reserve Components Personnel Center. The provisions of Army Regulation 15–6 will not be applicable to such proceedings.'
"3. The above provisions are effective immediately." (First Army Circular 135–7 dated November 24, 1970.)

8. See Note 1 supra and cases cited therein.

procedure, we are unable to conclude that the procedure is constitutionally defective.

While Army Regulation 135–91 contained a provision for a hearing before the Delay Appeal Board at times pertinent in *O'Mara,* so far as Keister is concerned the result is not altered by the present provisions under which the Board considers only documentary evidence. Keister admits that he was absent from training duty. There is no question of credibility to be determined. The only question is whether Keister presented an excuse which was legally sufficient by Army standards. If he did not do so, he is to be activated. The type of evidence which Keister felt relevant, his statement as to why he left training duty and a psychiatrist's report, were well suited to documentary presentation.

Keister does not suggest what he could offer at a hearing that he has not already supplied or how the absence of a hearing was prejudicial to him. Procedural safeguards must be considered in light of factual context. Here, there is no extraordinary circumstance which would justify our rewriting internal military procedure: O'Mara v. Zebrowski, supra.

 Moreover, it was Keister's failure to follow regulations which initiated this entire chain of events. First of all, he left training duty. If he did so without justifiable excuse, a hearing before the Delay Appeal Board would accomplish nothing. On the other hand, if he had a sufficient reason, he should have presented it to his commanding officer in a timely way. There is no assertion that he did so. It was not until his orders to active duty had been requested that petitioner did the things which the regulations required of him. He is hardly in a position to complain that these same regulations deny him the right to a hearing before higher authority when he failed to avail himself of the opportunity to present evidence to his own commanding officer.

 Keister's assertion that he was denied due process because he had no hearing before his commanding officer is also without merit. Keister made no effort to have his absences excused until his commanding officer had requested the orders to active duty. Keister was not just a few days late in submitting his excuse, but approximately a month. He was not denied a hearing—he just never asked for one within the applicable time limits.

 In San Fillippo v. Seaman, No. 1188–70, an unpublished opinion of the District Court for New Jersey, Judge Barlow said:

Specifically, plaintiff first contends that the Army appeal procedures violated due process of law as required by the Fifth Amendment to the Constitution, since no right to a full adversary hearing exists at any level of Army review. It is clear, initially, that the applicable Army Regulation sets forth reasons and provides procedures for excusing absences from training assemblies. See AR 135–91, Section 9. Furthermore, it is required that the reservist be informed at his orientation of the attendance requirements, the excused absence procedures, and the penalty for failure to attend. In addition, the reservist is advised of these provisions again promptly following each unexcused absence. See AR 135–91, Sections 13, 14. Moreover, the regulation requires that a commander who requests the issuance of active duty orders because of a reservist's failure to attend meetings must certify that these absences were not due to "cogent or emergency reasons." See AR 135–91, Section 12(2). This procedure places the burden squarely upon the Army to determine that no such reasons exist before activating a reservist. If the Army fails to investigate such a situation when it arises, or if the Army fails to act upon documentation or explanation presented by the reservist which is sufficient to warrant the granting of an excused absence, it has thereby ne-

glected to adhere to its own Regulations, and such neglect is an appropriate issue for review here. In any event, plaintiff has cited no authority to this court indicating that adversary hearings are required in Army appeals in order to satisfy due process, nor do considerations of logic or policy dictate that result. Accordingly, this court is satisfied that the Army procedures set forth in AR 135–91 which are applicable to this case fully comply with the requirements of the United States Constitution.

Since activation is not penal in nature but at most an administrative sanction imposed for breach of an enlistment contract and it is Congress, not the military, that has prescribed the procedures for activation under 10 U.S.C. § 673 no hearing is necessary: Mickey v. Barclay, 328 F.Supp. 1108, 1114 (DC Pa. 1971).

III. Due Process Requirements as to Findings of Fact, Reasons, and Conclusions

 Petitioner next contends that the Delay Appeal Board did not set forth its findings and reasons for the denial of his appeal and that this also denied due process of law.

The Board stated:

Findings: Having carefully considered the facts and documents submitted by PVT. Richard L. Keister, Jr., 165–36–5130, incidental to his delay appeal application the Board finds: That the documentation submitted fails to qualify for mitigation or relief from his involuntary call to active duty.

a. A detailed analysis of this case reveals that the administrative factors required to support an involuntary call to active duty for unsatisfactory participation have been consummated. This review included examination of the petitioner's Military Personnel Records Jacket (DA Form 201); 16 September 1970 letter of appeal for relief from call to active duty; and several forwarding command indorsements.

b. The tense of the petitioner's appeal is directed towards justifying why he knowingly and willingly violated specific guidance concerning his unsatisfactory attendance. His stated extenuation was unanimously viewed as unsupported and unacceptable grounds for favorable consideration by this Board.

Recommendation(s): In view of the findings in paragraph 5, the Board recommends disapproval of PVT. Keister's appeal from his involuntary order to active duty.

While the findings could be more detailed, they are sufficient for the Army's purposes and for my review in this case. After going over the indorsements and confirming that the administrative steps were properly completed, the Board considered all the documents submitted by petitioner which contained factual data. Having reviewed these same documents, I am convinced there was enough evidence to support the conclusion that Keister is merely trying to avoid the consequences of knowingly violating orders.[9] As a result, Scott v. Commanding Officer, supra does not apply here. In *Scott* there was a specific finding that on administrative review the file showed nothing to support the decision reached by the Selective Service Administration.

---

9. On July 14, 1969, petitioner signed his orientation statement of Reserve Agreement Understanding which provides in part. "I understand I will be ordered to active duty for a period which, when added to my prior service on active duty, active duty for training, annual field training or full time training duty, will · total twenty-four (24) months if I fail to attend active duty for training." Army Regulation 135–91, paragraph 13b provides that only one orientation statement need be in the reservist's Military Personnel Records Jacket for the period of current enlistment.

IV. Due Process does not Require Consideration of Material Submitted Beyond Appeal Time Limits

 Linked to petitioner's contentions concerning the findings are his objections to the Delay Appeal Board's failure to consider various memoranda mailed to the Army. On January 21, 1971, February 8, 1971, and February 10, 1971, petitioner's counsel sent registered letters "pertaining to" or "of appeal" to the Army which were not in the Board's file.[10]

In view of the fact that petitioner was notified on or about November 27, 1970, that he had 15 days in which to appeal and supply additional information, these letters were months late. Keister contends, however, that the 15-day time limit was waived because the Army accepted them. As I understand it, Keister is arguing that the Army receives mail at its peril. Thus, if someone dashes off a registered letter several months beyond a time limit prescribed by Army regulation and the letter is not returned (unopened?), the regulations are set aside and due process requires consideration of whatever may be sent thereafter. Unfortunately, despite the veritable salvos of material counsel has directed to me, no citation for this interesting proposition has been given and I have been disappointed in my efforts to find support for it. I am therefore compelled to reject this argument.

V. Due Process does not Require Absences be Excused

 Petitioner's next contention involves paragraph 9(a) of Army Regulation 135–91 which states:

Excused absences. a. Absences from scheduled unit training assemblies or annual training *may* be authorized by the unit commander for reasons of sickness, injury, emergency or other circumstances beyond the control of the member and substantiated by appropriate affidavits or certified by a doctor or medical officer, providing such documents are received within 14 days of the absence. (Emphasis added.)

Petitioner contends that he left training duty for a reason of sickness, which has been substantiated by the report of Dr. Sadoff. Therefore, he argues that unless his leaving summer camp is excused he has been denied due process.

Of course, there are two obvious defects in Keister's reasoning. First, Regulation 135–91 requires the substantiation for the absence within 14 days, and secondly, the acceptance of the excuse and authorization for missing duty is a matter within the commanding officer's discretion as shown by the use of the word "may". Here, the certification was not provided until after the discretion had been exercised. Due process is not involved.

VI. Cruel and Unusual Punishment, Unequal Enforcement, and Invidious Classification under Due Process

 Finally, petitioner contends that an order to active duty for 17 months is "cruel and unusual punishment" under the Eighth Amendment to the Constitution and amounts to an unequal enforcement and an invidious classification when compared to various courts martial penalties for being AWOL.

Unless such activation is punishment, these contentions must fail to establish grounds for relief. In *O'Mara*, supra, the Court of Appeals described such activations as:

Involuntary activation, of course, has a substantial impact upon the reservist activated. Although O'Mara seeks to characterize involuntary activation as "punishment," and thereby magnify its impact upon him, this characterization does not fit well, for involuntary activation befalls reserv-

---

10. A letter from Dr. Sadoff dated February, 2, 1971, as an inclosure in the February 8, 1971, letter was in the file.

ists who fail or are unable to attend unit training assemblies because of a change in residence or job interference, as well as those who fail to attend without proper authority. Rather, the primary purpose of involuntary activation appears to be to maintain the military proficiency that is otherwise maintained by attendance at unit training assemblies.

This is exactly the situation presented in the instant petition and disposes of the punishment contention. See also Mickey v. Barclay, supra.

The unequal enforcement and invidious classification arguments are likewise without merit.

Persons in the military do not enjoy the full range of rights enjoyed by civilians, and, in addition, voluntary enlisted reservists, like O'Mara, are a class distinct from inducted servicemen. They voluntarily subject themselves to the jurisdiction of the Army, and when they enlist, they are apprised of the consequences of failure to participate satisfactorily in unit training assemblies. O'Mara v. Zebrowski, supra.

Voluntary enlisted reservists are, moreover, in a distinct category from soldiers on active duty. By virtue of being reservists they fulfill an obligation of citizenship with a minimum of hardship and inconvenience. Most of their time they are civilians. They should be classified with other reservists and not active duty personnel. Here, there was no unequal enforcement or invidious classification but rather the Army's enforcing its rights to have a reservist perform according to the terms of his enlistment and thus to maintain his military proficiency, or go on active duty to maintain it.

I have reviewed petitioner's claims. I can find no violation of his rights and no errors in the procedures followed by the Army to call him to active duty. Therefore, his petition should be dismissed.