**Thomas L. JOLICOEUR, Petitioner,**

v.

**Honorable Melvin LAIRD, Secretary of Defense, et al., Respondents.**

**No. 4–71–Civ. 352.**

United States District Court,
D. Minnesota,
Fourth Diivsion.

Nov. 11, 1971.

Peter Lindberg, Minneapolis, Minn., for petitioner.

Stephen G. Palmer, Asst. U. S. Atty., Minneapolis, Minn., for respondents.

## MEMORANDUM DECISION

LARSON, District Judge.

This is an application by petitioner Thomas L. Jolicoeur for a writ of habeas corpus. Jurisdiction is invoked pursuant to 28 U.S.C. § 2241. A hearing was held before the Court on August 27, 1971.

Prior to September 24, 1970, petitioner was a member of the Minnesota Army National Guard. He had enlisted on December 28, 1965. In June, 1970 petitioner was participating in summer training camp when he allegedly became physically ill. After visiting an Army physician and receiving some medication, petitioner obtained a week end pass, left camp on Saturday, June 20, and went home to Minneapolis. Although he had been scheduled to remain at the camp until June 27, petitioner did not return. On Wednesday, June 24, petitioner visited his family doctor in Minneapolis. Sometime after examining petitioner the doctor wrote a letter to petitioner's commanding officer requesting that petitioner's absence from summer camp be excused for medical reasons. Whether this letter was ever received by the commanding officer, however, is not clear from the evidence.

At any rate, by letters dated June 25, 1970, petitioner's commanding officer informed petitioner that he had accumulated five unexcused absences from training assemblies, and that these unexcused absences necessitated a request by the commanding officer that petitioner be discharged from the National Guard and ordered to active duty in the Army. At the same time petitioner received a separate letter from the commanding officer notifying him that he had 15 days from the date of receipt of these letters to appeal the decision to request that he be ordered to active duty. Petitioner received these letters on July 7, 1970. No appeal of this decision was ever made by the petitioner.

Petitioner claims that after receiving these letters he called the Adjutant General's Office in St. Paul and asked someone in that office what he should do. He claims that he was told that he should simply take the letters to his next National Guard meeting and attempt to straighten the matter out at that time. Petitioner, however, does not remember the name of the person from whom he allegedly received this information.

After allegedly receiving this information, however, petitioner did not attend his next National Guard meeting. He claims that he was under the care of Dr. William R. Goodchild, a psychiatrist, and was physically unable to attend the meeting. Even subsequent to the date of this missed meeting, however, the letters received by petitioner on July 7, 1970, were never brought to the attention of anyone in his National Guard unit.

On August 18, 1970, petitioner received an order to report for active duty on September 25, 1970. On August 27, 1970, presumably at petitioner's request, Dr. Goodchild sent to the Department of the Army a copy of a complete psycho-

logical evaluation of the petitioner. Accompanying this evaluation was a statement by Dr. Goodchild that it was his opinion that petitioner was not suitable for military service. It appears, however, that this information was sent to the wrong address and was not received by the proper military authorities until sometime after October 12, 1970. Because this information was not received by the military authorities until after petitioner had been ordered to report for active duty, it was not considered by them.

On September 24, 1970, in anticipation of petitioner reporting for active duty on the following day and pursuant to the appropriate Army regulation, petitioner was discharged from the National Guard. On the following day, however, petitioner failed to report for active duty as ordered. He was subsequently apprehended by the authorities and taken into custody. In response to this confinement petitioner brought the instant petition for a writ of habeas corpus, claiming that the order to report for active duty was invalid. The validity of this order to report for active duty, therefore, is the issue which is presented to the Court by this petition.

AR 135–91 is the Army regulation which sets forth the requirements for satisfactory participation in a Ready Reserve component of the Army, such as the Army National Guard. As well as setting forth the requirements for satisfactory participation, the regulation also sets forth procedures for enforcement of these requirements. The regulation provides that a member fails to participate satisfactorily when he accrues in any 365 consecutive day period a total of five or more unexcused absences from scheduled unit training assemblies. An absence is considered by this regulation to be unexcused unless it is authorized by the unit commander for reasons of sickness, injury, emergency, or other circumstances beyond the control of the member and substantiated by appropriate affidavits or certified by a doctor or medical officer. The regulation further provides that a member of a Reserve unit who fails to participate satisfactorily will be ordered to active duty for a period which, when added to his prior service on active duty, will total 24 months.

Applying this regulation to the facts of the instant case, it is clear that if petitioner's unit commander was justified in finding that petitioner's absence from summer camp was not excusable, then the order requiring petitioner to report for active duty was valid and should not be disturbed by this Court.

In determining whether the unit commander was justified in concluding that petitioner's absence from summer camp was not excusable, the Court is constrained within a very narrow scope of review. Recent decisions make it quite clear that, absent extraordinary circumstances, discretionary determinations by military officials made within their valid scope of authority will not be reviewed by the courts. Byrne v. Resor, 412 F.2d 774 (3rd Cir. 1969); Smith v. Resor, 406 F.2d 141 (2nd Cir. 1969); United States ex rel. Schonbrun v. Commanding Officer, 403 F.2d 371 (2nd Cir. 1968), cert. denied, 394 U.S. 929, 89 S.Ct. 1195, 22 L.Ed.2d 460 (1969). Such discretionary determinations will be set aside only if the military officials have failed to comply with the appropriate regulations governing their conduct. See Smith v. Resor, *supra*.

AR 135–91 places discretion in the unit commander to determine whether an absence from a unit training assembly shall be considered excused or unexcused. See Leifermann v. Secretary of the Army, No. 70–858 (D.S.C., Jan. 5, 1971), reported in 4 Selective Service L. Rptr. 3108. In the instant case the unit commander determined that petitioner's absence from summer camp should not be excused. In making this determination it appears that the unit commander complied with all of the appropriate Army Regulations. Also, in issuing the

subsequent order to report for active duty, it appears that all relevant regulations were complied with.

Petitioner argues that his right to appeal the unit commander's determination was summarily denied. This argument, however, belies the record. Petitioner was notified in clear, unambiguous language of his right to appeal the unit commander's determination. This notification was contained in one of the letters received by him on July 7, 1970, which letter stated:

"As Unit Commander it is my duty to inform you of your right to appeal order to Active Duty and any such appeal must be submitted no later than 15 days from reciept [sic] of this letter."

In spite of this clear notification petitioner chose not to make any appeal. He claims that he made no appeal because he was told by someone in the Adjutant General's Office that he should simply take the letters to his next National Guard meeting and straighten the matter out at that time. Even if this story is true, however, petitioner did not attend his next National Guard meeting. Furthermore, even if petitioner's excuse for failing to attend this next meeting was a valid one, he did not, even subsequent to the time of this missed meeting, bring the letters to the attention of anyone in his National Guard unit.

Only after receiving his orders to report for active duty did petitioner make any attempt to alter the situation. It was at this time that his doctor sent to the Department of the Army a copy of a psychological evaluation of the petitioner, accompanied by the doctor's statement that it was his opinion that petitioner was not suitable for military service. This information, however, was received in a far too late and remote manner to be considered an appeal. At best, it might have been considered as a request for a medical discharge. If it was intended as a request for a discharge, however, petitioner did not proceed in accordance with the appropriate Army regulations. If petitioner does indeed wish to apply for a discharge, he should do so in the proper manner after reporting for active duty.

■ On the basis of this record it can hardly be said that petitioner was denied his right to appeal the unit commander's determination. Therefore, since the petitioner has shown no failure on the part of the military authorities to comply with any of the appropriate Army regulations, the unit commander's discretionary determination that petitioner's absence from summer camp should not be excused and the subsequent order requiring petitioner to report for active duty will not be reviewed by this Court.

Petitioner's request for a writ of habeas corpus must therefore be denied.