Thomas L. **FEENY**, Petitioner,

v.

Captain Melvin C. **SMITH** et al.,
**Respondents.**

No. C 168–72.

United States District Court,
D. Utah, C. D.

Feb. 27, 1973.

F. Robert Reeder, Salt Lake City, Utah, for petitioner.

Glenn J. Mecham, Asst. U. S. Atty., Salt Lake City, Utah, for respondents.

## MEMORANDUM AND ORDER

ANDERSON, District Judge.

Thomas L. Feeny enlisted in the United States Army Reserve for six years on

December 3, 1968. He brings this action to seek an order releasing him from restraints on his liberties by the respondents and for discharge from the U. S. Army Reserve. In the alternative he asks that respondents be required to follow their own regulations and excuse the petitioner for his absences of November 20 and 21, 1971, and that he be reinstated in his former rank, status and position in the United States Army Reserve.

Jurisdiction is predicated upon 28 U. S.C. § 2241(c)(1) for consideration of habeas corpus and under 28 U.S.C. § 1361 for consideration of petitioner's request for mandamus. There appears to be no question on jurisdiction.

Under 10 U.S.C. § 673a, the President may order to active duty a member of the ready reserve who is not participating satisfactorily in his reserve unit. This authority was delegated by the President to the Secretary of Defense by Executive Order No. 11366, and by him to the Secretary of the Army. See Anderson v. Laird, 437 F.2d 912, 913 (7th Cir. 1971).

Criteria for satisfactory participation are set forth in Army Regulation 135-91(12) which provides:

A member fails to participate satisfactorily when he accrues in any one-year period a total of five or more unexcused absences from scheduled unit training assemblies.

Absences and excuses are governed by the following regulation:

Absences from scheduled unit training assemblies or annual training may be authorized by the unit commander for reasons of sickness, injury, emergency, or other circumstances beyond the control of the member and substantiated by appropriate affidavits or certified by a doctor or medical officer, *provided such documents are received with 14 days* of the absence. (Paragraph 9a, AR 135-91, April 18, 1971). (Emphasis added). (Language the same in DOD Message 241701Z, Mar 72 superseding above

paragraph) (Time shortened to 14 days on August 28, 1970).

In this case the Army has determined that the petitioner failed to properly attend five meetings in a one-year period and that none of these absences was excused. The Army notified the petitioner that he failed to participate satisfactorily and that he would be called to active duty. The petitioner's appeal to the Army, authorized by regulation, has been denied. He has now brought this action against the respondents and has asked the court for the relief above described.

■ It has been well established that purely discretionary decisions of military officials within their valid jurisdiction are beyond the permissible scope of review of federal courts. Orloff v. Willoughby, 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1953); O'Mara v. Zebrowski, 447 F.2d 1085 (3rd Cir. 1971); Caruso v. Toothaker, M.D.Pa., 331 F.Supp. 294. The allowable scope of review in a case such as this is confined to a determination of 1) whether military orders were "promulgated in violation of the military's own regulation" (O'Mara v. Zebrowski, supra); 2) whether the procedures employed by the military comport with the requirements of due process in the light of the context in which the procedures operate (O'Mara v. Zebrowski, *supra*; Ansted v. Resor, 437 F.2d 1020 [7th Cir. 1971], and Caruso v. Toothaker, *supra*); and 3) whether the military has acted within the jurisdiction conferred on it by valid law (Winters v. United States, E.D.N.Y., 281 F. Supp. 289, aff'd 390 F.2d 879 [2d Cir. 1968]). The foregoing definition of permissible scope of review, found in the *Caruso* case, appears to provide the guidelines for decision here.

Petitioner Feeny had missed several unit assemblies prior to those of November 20 and 21, 1971. In all of these he had submitted excuses which were accepted and, with one exception, had been received by the date specified in the notice. The first of the five absences

which served as the basis for the present order for activation occurred on February 20, 1971. Feeny has submitted no excuse for this absence and, according to the form which is in evidence (Exhibit A), he was charged with two absences for this failure to attend. There were apparently two periods which he had to attend on that day. He was also absent on November 20 and 21, 1971. On each of these days there were two periods scheduled and he was charged with two absences for each day for his failure to attend. With the addition of these four absences Feeny was thus chargeable with at least five absences, which constitutes unsatisfactory performance due to lack of attendance under AR 135–91(12) and which may call for an order to active duty.

On November 22, 1971, Feeny was mailed a 6AA Form 504 (Exhibit A, p. 25) stating, among other things, that he had until December 6 to supply an excuse for his absences. Feeny claims not to have received this notice, and the evidence shows a registered letter was sent but was returned unclaimed. Feeny submitted a letter from Dr. Harline as an excuse on December 17, 1971, which was rejected by his commander, Captain Melvin C. Smith, as being "too late." At page 24 of Exhibit A is found a "Memorandum for the Record," with the subtitle "Investigation of Absence." This Memorandum signed by Captain Smith, is dated November 21, 1971, and reflects, among other things, that the captain made two phone calls in attempting to locate Feeny. The captain's entry states: "Was told by roommate that Feeny was in Ogden, Utah. Called telephone number 393–4421 and was told by his sister that he was in Salt Lake City, Utah." The bottom half of this memorandum form calls for a classification of the absence by the unit commander. A mark was placed in the box beside "unexcusable," and the indication was made that Feeny would be charged with five unexcused absences. There is no other evidence in the record, or that was presented to the court, indicating any

other contact prior to the call for active duty in which the captain undertook to find out from Feeny or the doctor or anyone else what the circumstances were upon which he based his claim for excuse. The record does contain, of course, the letter from Dr. Wesley G. Harline (page 26 of Exhibit A) which states: "To Whom It May Concern: This is to certify that Tom Feeny was under my care for treatment of upper respitory [sic] infection and was unable to attend his Guard Meeting on November 20 and 21, 1971." It was signed by the doctor on December 17, 1971, with a notation by Sgt. Hamrick that it was received on December 21, 1971, by the Army.

Feeny's claim with respect to his absences on these two dates was, of course, that he was too ill to attend. He offers to show the court through the affidavit of his roommate that he was sick in bed for a period of over two weeks and that the roommate was sent to pick up the registered mail, but that they would not deliver it to him, and that before he could go himself to pick it up it had been returned to the Army. The respondents have objected to the admission of the affidavit or its consideration by the court. Their claim is that the court's review of the facts is limited to the record before the court (Exhibit A). However, the court will consider it for what it purports to be: a claim of facts Feeny contends he could have shown if the opportunity had been afforded him to do so, or as a claim by Feeny of information which the captain would have found had he made the investigation which petitioner says was required of him by regulation under the circumstances of this case.

On February 10, 1972, Feeny was advised that a recommendation had been made to call him to active duty; that he had fifteen days to appeal and could use his DA 201 military personnel record for assistance. On February 25, 1972, Feeny filed his appeal through counsel, noting, among other things, that he had been denied access to his DA 201 mili-

tary personnel file. Respondents do not dispute this claim. On March 3, 1972, Captain Smith filed a reply letter to the appeal of February 25. It is the contention of the petitioner Feeny that the reply letter contains misrepresentations of fact with respect to his receiving annual orientation and being advised concerning the fourteen-day period within which an excuse must be submitted following an absence from drill.

Feeny stated in his March 16 addendum to his appeal he still had not been given access to his military records file (DA 201), which he needed to rebut Captain Smith's March 3 letter. On March 6, 1972, Battalion Headquarters recommended disapproval of the appeal. On March 13, 1972, 96th ARCOM recommended disapproval of the appeal. On April 4, 1972, in a supplementary appeal, the petitioner acknowledged having received access to his military personnel records file (DA 201) on April 3, and noted the orientation and notice deficiencies. He claimed misrepresentations were present in Captain Smith's letter of March 3 on these subjects, as noted above. Captain Smith's March 3 letter represented that Feeny had received word from Sgt. Hamrick on or about February 28 that upon appointment being made access to the military personnel records jacket might be had by Feeny and/or his counsel.

On June 16, 1972, the petitioner was advised that the review board by a vote of two to one recommended denial of petitioner's appeal. The delay appeal board record of proceedings dated June 2, 1972, shows that the board reviewed the petitioner's military personnel records jacket (DA 201), and the February 25 and March 16 letters of appeal of the petitioner for relief from call to active duty, as well as several forwarding command endorsements, but it does not show that Feeny's April 4 supplemental appeal letter was considered. Respondents have filed an Exhibit X, attached to their memorandum, which they ask to be received in evidence. This is an affidavit of Major Toohey, the recorder of the appeal board, representing that the April 4 letter was considered by them. The petitioner Feeny makes the same objection made by respondents to his roommate's affidavit; that is, if the court's review is to be confined to the record before it (Exhibit A only), then Exhibit X could not be received. However, the court finds this is a proper addendum to the record since it is in the nature of a correction, by addition, of what was considered rather than evidence itself. Furthermore, Exhibit A shows at page 1 a memorandum from H. L. Ligier, dated May 11, directed to the Commanding General of the RCPAC, which indicates that there had been included an addendum to appeal dated April 4, 1972, thus providing a reliable basis for inference that the appeal board did have the appeal of April 4 before it. In view of the posture of the case and the ruling of the court as appears hereafter, the court does not believe that any further hearing is required nor any other action in connection with the proffer of proof or objection thereto.

Feeny alleges manifest defects in the procedures employed by the Army in his case. The first claim is that the respondents failed to follow their regulations respecting orientation, particularly as to the fourteen-day limitation on excuses being offered for absences, and thereby denied the petitioner due process of law.

The regulation pertaining to training and attendance is Army Regulation (AR) 135-91. This provides as follows:

12. ORIENTATION. In order to assure that each enlisted reservist is fully aware of and understands his obligations, the prerequisites for maintaining satisfactory participation, and the actions which will result from unsatisfactory participation, the unit commander will—

(a) advise each new unit member of the principal provisions of this regulation upon his enlistment or assignment. The orientation will be repeat-

ed at least once annually for each enlisted member of the unit. Emphasis will be placed on the following:

(1) the basic policy (Para. 5.)

(2) excused absences from training (Para. 9.)

(3) excused absences from training (Para. 11 and 12.)

(b) cause each enlisted member to sign a statement that he has been oriented on and understands the satisfactory participation requirements and enforcement provisions. This statement will be signed in the presence of and countersigned by the unit commander or his duly authorized representative. The statement will be filed in the member's military personnel records jacket as a semi-permanent document.

AR 135–91 provides for letters of notification in paragraph 12(e):

In addition to the orientation requirements specified in paragraph 13, the unit commander will—

(1) Insure that following each scheduled training assembly (UTA or MUTA) from which a member is absent without authority, but prior to the next scheduled training assembly (except as provided in (2) below)—

(a) The member is contacted in person, if practical, and furnished with a letter of instruction (prepared locally) outlining his obligation to participate satisfactorily stating the number of absences he has accrued and explaining the implications of additional unexcused absences from training.

(b) If he is unable or it is impractical to establish personal contact, the member is furnished a letter of instruction by certified mail, delivered to addressee only, return receipt requested.

The petitioner claims that he received his last annual orientation on May 3, 1969, and that in view of the clearly stated purpose of the same to advise the member of the policy and practice of the unit with respect to excuses for absences, the failure to provide annual orientation thereafter was a failure of due process.

Feeny further contends that his military personnel records file (DA 201) has been changed to show a later orientation, when in fact such did not occur as required. The answer of the respondents notes that the letter of Captain Smith of January 28 (Exhibit A, page 9) states that when he became petitioner's battery commander (October 16, 1971) he had talked to Feeny on "several occasions before that date." The respondents argue that from this letter it is clearly indicated he was counseled and oriented on his role. They further urge that this issue, in any event, has to be resolved within the confines of the administrative record (Exhibit A), and that the only evidence in said record consists of the petitioner's allegation and Captain Smith's letter. Consequently, they state that the court should accept Captain Smith's letter in this regard. Respondents further argue that even if petitioner was correct in this contention that no prejudice resulted and that absent a showing of prejudice the allegation of non-compliance with the regulation is immaterial. Grosso v. Resor (E.D.N.Y., 1971), 322 F.Supp. 670, 674.

For some reason which the court does not understand the respondents have not seen fit to offer into evidence the military personnel file (DA 201) of the petitioner. Consequently, the court is without opportunity to determine what the facts are regarding the orientation issue as they appear in the DA 201 file. Further, inasmuch as the appeal board did not make specific findings in connection with this dispute, it is not possible for the court to determine by way of review whether or not the regulation concerning annual orientation was followed. Captain Smith's letter of January 28, 1972 (Exhibit A, page 29) states he had talked to Feeny several times prior to October 16, 1972, and called him on that date and talked to him about his absences from drill. He requested a chance to talk to him at the time of the

November drill to get things straightened out. He represents that Feeny agreed. In view of this fact it might reasonably be inferred that he suffered no actual prejudice insofar as the failure to orient annually was concerned. If this alone were the only claim of the petitioner his case might well be disposed of out of hand. Feeny, however, also claims he did not receive notice of the fourteen-day limit on excuses either at annual orientation or otherwise, and that it is a denial of due process to refuse his excuse for November 20 and 21 solely because it was late under the circumstances in this case.

Captain Smith, in his letter of March 3 (Exhibit A, page 2), above referred to, responds by pointing out that letters of instruction were mailed to petitioner on four prior occasions in which it was stated that Feeny "had fourteen days to show cause why unauthorized absences should be changed to authorized absences," and that Feeny, therefore, must have known of the time limitation on excuses. Feeny claims that this is a misrepresentation of the facts; that the October 18 letter was returned unclaimed; that with respect to the others, "fourteen days" was not mentioned as such. Instead, specific dates were set by which an excuse had to be received. Feeny claims that these dates ranged from thirteen to sixteen days from the date of the absence, rather than fourteen days, and that he met these deadlines. He argues that no inference can be drawn from these facts that he had knowledge of the fourteen-day limitation. To the contrary, he claims that when he knew of the date, by respondents' admission, he met it.

Here again, inasmuch as the DA 201 file of the petitioner was not made available to the court, the court is not in a position to determine the question as between the contentions of parties. In addition, the findings of the appeal board fail to particularize the facts with respect to this issue.

The importance of orientation and notice is borne out in the provisions of Paragraph 5.1, Paragraph (b) of the Sixth Army Supplement to AR 135–91, which states:

> The final determination of whether an obligated enlisted member of the Army Reserve has failed to participate satisfactorily and consequently should be ordered to active duty is the responsibility of the Army Commander. It is *imperative* that proper documentation is accomplished and that all regulatory requirements as to orientation and notification are met prior to recommending a member for involuntary active duty. (Emphasis added.)

■ Here again, inasmuch as the petitioner has acknowledged receiving a number of notices prior to the critical dates of November 20 and 21, which themselves significantly admonish the reservist with respect to the importance of attendance, the failure to give notice prior to the particular occasions giving rise to his order to involuntary active duty was not prejudicial to the petitioner. These notices themselves, by his own claim, required an excuse to be provided within thirteen to sixteen days, and the excuse proffered for November 20 and 21 came thirty-one days after the absence. In short, it might be reasonably inferred that he knew that the excuse would have to be in at least within the period he acknowledges and that his December 17 excuse was far in excess of that. If this were the only complaint, relief could not be granted. In the present case, however, this claim is part of a larger picture of noncompliance by the respondents with their regulations with respect to the procedure required in handling a matter of this kind.

■ The petitioner Feeny next contends that he was denied due process of law by reason of the fact that the procedures for handling his appeal had assured him that he would have available his military personnel records to prepare his appeal, and that the same were not available and were not considered by the first two levels of officers having authority to approve his appeal or to forward it for further consideration.

There is no question but that the letter of February 10, 1972, advising him that he was to be ordered to active duty, did inform him of his right to appeal and that he could have the assistance of his DA 201 military personnel records jacket in preparing the same. His appeal was filed on time. The appeal clearly noted and complained that he had not had access to this file. Captain Smith's March 3 letter, responding to petitioner's appeal letter of February 25, makes claim in this connection only that the personnel records jacket was offered for examination by appointment at any reasonable time after February 28. In view of the claim of the petitioner in his February 25 appeal letter that the file had not been made available to him, and in the absence of any specific finding by the board of appeal with respect to the same having been made available, the only reasonable inference the court can draw is that it had not been made available prior to that time. The petitioner further asserts in his March 16 letter of appeal that the record still was not available, and in his April 4 supplementary appeal letter claims that it was only made available to him April 3. Here again, the court does not have the DA 201 file and, in the absence of a specific finding by the appeal board on this issue of fact, the court cannot conclude that the record was made available prior to the time when petitioner contends that it was, or at least before March 16, 1972. By this time the first two stages of the appeal process had taken place, resulting in recommendations in favor of his being called to active duty. These recommendations were made without the benefit of such input as the April 4 letter might have given to the appellate officers. It is to be remembered that the final vote of the appeal board was two to one, with one of the officers believing that petitioner had made out a favorable case. In view of the imperative nature of the requirement for orientation and notice, as referred to in Paragraph 5.1, Paragraph (b) of Sixth Army Supplement No. 1 to AR 135–91, these facts seem significant. After all, the right of appeal finds its meaningfulness in the opportunity to persuade those having the authority to act that the decision appealed from was incorrect. A view of the facts as claimed by the petitioner, including an understanding of the importance of orientation and notice, might have prompted a ruling favorable to petitioner at one of the first two levels of review. Under such circumstances, there is serious question whether petitioner's appeal can be called meaningful. Specific findings on such issues would seem to be a necessary part of the appeal process, as opposed to general findings of the type made in this case.[1] In the absence of such assistance the court is of the opinion that the petitioner lost the opportunity to have input from his DA 201 file at the first two

1. The findings of the Board are very general and conclusory and closely identical with those in Keister v. Resor, 343 F.Supp. 203 (E.D.Pa.1971). The Board stated in that case, at 210:

"Findings: Having carefully considered the facts and documents submitted by PVT. Richard L. Keister, Jr., 165–36–5130, incidental to his delay appeal application the Board finds: That the documentation submitted fails to qualify for mitigation or relief from his involuntary call to active duty.

"a. A detailed analysis of this case reveals that the administrative factors required to support an involuntary call to active duty for unsatisfactory participation have been consummated. This review included examination of the petitioner's Military Personnel Records Jacket (DA Form 201); 16 September 1970 letter of appeal for relief from call to active duty; and several forwarding command indorsements.

"b. The sense of the petitioner's appeal is directed towards justifying why he knowingly and willingly violated specific guidance concerning his unsatisfactory attendance. His stated extenuation was unanimously reviewed as unsupported and unacceptable grounds for favorable consideration by this Board.

"Recommendation(s): In view of the findings in paragraph 5, the Board recommends disapproval of PVT. Keister's appeal from his involuntary order to active duty."

levels of officers having authority to act on his appeal. Under all of the circumstances previously referred to, this was a denial of a meaningful appeal.

The language of Judge McNichols in Baugh v. Bennett, 329 F.Supp. 20, 24 (D. Idaho 1971) is instructive.

> When Army regulations provide for an appeal by a Reservist from orders to involuntary active duty, these regulations must be held to require that a meaningful appeal be afforded. Anything less deprives the individual of due process of law which is guaranteed to all by the Constitution of the United States.

▇ Respondents contend that if the appeal board's reasons can be divined from the record itself with reasonable certainty, then there is no violation of due process in general findings. Even if valid, this contention is insufficient in this case. Where there are specific disputes of fact that divide the parties, the respondents must provide both specific findings and the DA 201 record which was used by the appeal board, so that the court's review may also be meaningful.

The final point which Feeny makes is that the respondents failed to make an investigation to determine if any "cogent or emergency reasons" existed which prevented the petitioner from attending the scheduled training assemblies in question, contrary to the regulations so requiring.

As indicated above, the absences which serve as the basis for the petitioner's order to active duty are absences on February 20 and November 20 and 21, 1971. In connection with each of those days two absences were charged. If the absences to be charged will result in a total of five or more, AR 135–91, Paragraph 12(e)(2) provides:

> [I]n addition to the orientation requirements specified in paragraph 13, the Unit Commander will—

> (2) If the absences charged will result in a total of five or more unexcused absences in a 1-year period, determine if any cogent or emergency reasons exist which prevented the member from attending.

The answer of the respondents is that the officer has no discretion to provide an excuse for absences where the excuse has been proffered more than fourteen days after it occurred. Respondents further argue that a certified letter was sent to petitioner explaining he had just fourteen days to submit an excuse for missing the unit assembly. The letter was unclaimed by the petitioner and returned. The excuse was finally received thirty-one days after petitioner missed the meeting and fifteen days after the deadline for submission of the excuse. Respondents argue that petitioner should be charged with knowing that he could not wait that long after missing a meeting to submit his excuse. Furthermore, they claim he should not be able to aid this excuse by refusing to pick up his certified mail (Hughes v. Laird, C–1858–71, June 9, 1972). Thus, it is asserted that due to the lateness of the excuse a denial by Captain Smith was required by Paragraph 9(a) of Army Regulation 135–91 and sanctioned by the courts. (See Jolicoeur v. Laird, D. Minn., 344 F.Supp. 1125.)

▇ The problem presented by the argument of the respondents in this respect is that the regulation quoted above, AR 135–91, paragraph 12(e)(2), requires that where the absence is one which will result in five or more unexcused absences in a one-year period that there must be a determination whether or not any cogent or emergency reasons exist which prevented the member from attending. This seems clearly to be a requirement in addition to those of AR 135–91, 12(e)(1), (a) and (b). Further, the regulation limiting the time for providing an excuse to fourteen days cannot be construed as a release from the obligation to investigate for "clear

and cogent reasons" on the fifth absence, required by AR 135–91, 12(e)(2). The latter does not so limit this obligation. The court concludes, therefore, that on a fifth absence, even though an excuse is not proffered within the fourteen-day period, the commander nonetheless has the obligation of making an investigation which will enable him to certify whether or not any cogent or emergency reasons exist which prevented a member from attending. Consequently, simply stating the excuse was not received in time is not a discharge of the obligations which the investigating officer has under that regulation. Certainly the record of investigation of absences at page 24 of Exhibit A, covering November 21, 1971, is not a sufficient investigation, nor does it appear to be intended as an effort to comply with the requirement of the above regulation. All that it recites is the following: "Was told by roommate that Feeny was in Ogden, Utah. Called Telephone Number 393–4421 and was told by his sister that he was in Salt Lake City, Utah." The captain did not ask for "reasons." He did not discuss with Feeny, Feeny's doctor, or anyone else the conditions of the proffered excuse. Consequently, it is difficult to see how Captain Smith's call could satisfy the requirements of the regulation. It seems merely to be an effort to comply with the regulation to make the contact required with respect to absences under the regulation pertaining thereto, AR 135–91, 12(e)(1)(a).

▆ The court does not express any opinion on the quality of performance of Feeny that this record and his DA 201 file may disclose. Whatever that may be it does not eliminate the necessity which the regulation imposes upon the officer to check out the facts and to properly certify as the regulation requires. Whatever one may think of the attitude of the petitioner insofar as his response to his obligation to serve and to attend was concerned, the requirements of the regulation have their purpose. Essentially, it is to lay the foundation for the very serious step of ordering a reservist to active duty. To do this, those responsible for drafting the regulations which provide a procedural base for a call to active duty must have had in mind the purpose expressed in the regulations quoted earlier; that is, that no one would be called to active duty without every reasonable effort having been made to "weigh all the information, facts, circumstances and documentation incidental to the processing of an individual for involuntary active duty." Baugh v. Bennett, *supra*. Without question, what the Army chooses to do about the facts after they have been determined, what discretionary judgment they may see fit to exercise, as has been delimited by the courts, are their prerogative and responsibility. The courts should not interfere therewith. But the responsibility of following the regulation is in itself important. Procedural due process in such instances is of substantial concern to all of those who may be involved. A failure to require that such regulations be followed, even where the circumstances of a particular case may make it seem overly technical, would result in a breakdown of the system. As Judge Barlow stated in San Fillippo v. Seaman, No. 1188–70, an unpublished opinion of the District Court for New Jersey cited and quoted in Keister v. Resor, 343 F.Supp. 203, 209 (E.D.Pa.1971):

It is clear, initially, that the applicable Army Regulation sets forth reasons and provides procedures for excusing absences from training assemblies. See AR 135–91, Section 9. Furthermore, it is required that the reservist be informed at his orientation of the attendance requirements, the excused absence procedures, and the penalty for failure to attend. In addition, the reservist is advised of these provisions again promptly following each unexcused absence. See AR 135–91, Sections 13, 14. Moreover, the regulation requires that a commander who requests the issuance of active duty orders because of a reservist's failure to

attend meetings must certify that these absences were not due to "cogent or emergency reasons." See AR 135–91, Section 12(2). This procedure places the burden squarely upon the Army to determine that no such reasons exist before activating a reservist. *If the Army fails to investigate such a situation when it arises, or if the Army fails to act upon documentation or explanation presented by the reservist which is sufficient to warrant the granting of an excused absence, it has thereby neglected to adhere to its own Regulations, and such neglect is an appropriate issue for review here.* . . . (Emphasis added.)

In this case if Feeny was ill in bed for two weeks and under the care of a physician, then the failure to follow the regulations in question would be critical to his rights, particularly if the "imperatives" of orientation and notice have been neglected.

■ A further interesting fact in connection with the manner in which the investigation of absence was carried out is seen in the fact that an Investigation of Absence form was also filed for the absence of February 20. Petitioner was charged with two unexcused absences for which no excuse has been provided. These two are part of the five involved for which call to active duty has been made. This form, found at page 21 of Exhibit A, simply shows that on February 20, 1971, when the petitioner apparently did not attend drill, a call was made by Sgt. Hamrick to his residence. Under "Reason for Absence," Sgt. Hamrick has filled in the information, "No answer from telephone call." On the

lower part of the document, for use by the unit commander in evaluating the reason for absence, the "unexcusable" box has been checked and the notation made that Feeny would be charged with two unexcused absences. This conclusion was apparently reached because of the failure to receive any answer to the telephone call. While this is not at issue, because the petitioner did not provide an excuse for this absence, it is indicative of the kind of investigation which was made following the November absence.[2]

■ Although failure of orientation and specific notice of the time limitation on excuses may not be prejudicial in light of the circumstances of this case, the failure of meaningful administrative appeal and the effect thereof upon the meaningfulness of this review, together with the inadequacy of the Army's investigation concerning the reason for Feeny's fifth absence, do amount to prejudicial error which has deprived Feeny of the fundamental protection afforded by the Due Process Clause.

On that basis the court determines that petitioner's claim for release from the armed services should be, and is, denied; that the order requiring that Feeny be placed on active duty be vacated, and that Feeny be returned to the rank, position and status he held with his unit prior to the order to active duty.

In further proceedings involving petitioner, if any, the Army shall comply with Army rules and regulations and fulfill the duties imposed as thereby elaborated in the court's opinion.

It is so ordered.

2. It might be argued the investigation called for by the regulation applies to each of the five absences. However, on the basis of the reasoning of the *Caruso* case, which the court believes reasonable on this point, the court does not believe that such investigation must be made insofar as the February 20 absence is concerned, because it was not the fifth absence. *See* Caruso v. Toothaker, 331 F.Supp. 294.