**John T. ROHE, Petitioner-Appellant,**

**v.**

**Robert T. FROEHLKE, Secretary of the Army, and Commanding General, First United States Army, Respondent-Appellee.**

No. 893, Docket 74-1002.

United States Court of Appeals, Second Circuit.

Argued April 24, 1974.

Decided July 3, 1974.

**114**

Steven J. Hyman, New York City (Kunstler, Kunstler, Hyman & Goldberg, New York City, on the brief), for petitioner-appellant.

Thomas A. Illmensee, Asst. U. S. Atty. (Edward John Boyd, V, U. S. Atty. for the E. D. N. Y., and Paul B. Bergman, Asst. U. S. Atty., on the brief), for respondent-appellee.

Before LUMBARD and HAYS, Circuit Judges, and JAMESON, District Judge.*

HAYS, Circuit Judge:

Appellant Rohe brought this action for injunction and other relief claiming that the procedure by which he was ordered to active duty as an unsatisfactory reservist was improper because in appealing the order under Army Regulation 135–91, ¶ 20, he was not informed of or permitted to answer adverse factual allegations placed in his file. The district court held that the regulation did not require the Army to show the comments to appellant. The court denied Rohe's request for injunctive relief and granted the government's motion for summary judgment. 368 F.Supp. 114 (E.D.N.Y.1973). We reverse.

### I.

On June 26, 1971, appellant, a member of the United States Army National Guard, failed to report as ordered to annual summer training. He had notified his unit of his illness, but was told that he would have to report to summer camp and be examined by a military doctor there. Appellant claims that he was on sick report on June 26 in his regular job as a New York City policeman and that under departmental regulations he was forbidden to leave home. Appellant later submitted a memorandum from a police surgeon stating that appellant was ill and confined to home on June 26 and 27.

After the unit returned from summer camp Rohe met with Major Curran, the Assistant Inspector General, who subsequently recommended to the unit commander that Rohe be permitted to attend summer camp with another unit rather than being ordered to active duty. The unit commander rejected this recommendation and on September 15, 1971, Rohe was officially notified that active duty orders would be issued for him in about 30 days and that if he so desired he could appeal the decision within 15 days.

On September 22 Rohe filed his appeal. On September 28 Rohe was noti-

---

* Honorable William J. Jameson, Senior District Judge for the District of Montana, sitting by designation.

fied that his appeal had been received and would be forwarded to the unit commander for comments and recommendations and that upon receipt thereof "this office will advise you concerning the status of your appeal." The unit commander recommended denial of the appeal. On October 21, 1971, the Assistant Adjutant General directed the unit commander to "respond to [Rohe's] allegations on a point by point basis." On October 28 the unit commander responded, reiterating his disapproval of the appeal and stating reasons for his view.

On November 3 the Assistant Adjutant General returned the matter to the unit commander again for clarification and explanation of the allegations that Rohe had not talked to the police surgeon but to a policeman from the medical unit and that he had been returned to duty by the police surgeon on the morning of June 27.

On December 1, 1971, the Assistant Adjutant General once more returned the matter to the unit commander. He requested signed statements from the police surgeon and the sergeant of the police medical unit concerning the facts of Rohe's illness. He also requested an explanation from the unit commander concerning Rohe's history of illness, which had caused the unit commander to excuse Rohe from 19 drills in the six months preceding summer camp. On January

15, 1972, the unit commander replied to these requests. He also included statements by the battalion surgeon and the unit's first sergeant. Both statements claimed that, on questioning, Rohe admitted that he was not on sick leave but on vacation and that when asked to produce the letter from the police surgeon concerning a purported examination scheduled for June 28 he flushed the letter down the toilet.

On March 21, 1972, the convening authority, with one member dissenting, approved the recommendation that appellant be ordered to active duty.

Rohe claims, and the government does not deny, that after the letter of September 28 he never received notice of the Assistant Adjutant General's requests for further materials or of the responses of the unit commander.[1] Rohe specifically denies several of the factual allegations contained in these materials. The repeated requests by the Assistant Adjutant General for these materials show, he contends, that the materials were crucial to the denial of his appeal. He feels there might have been a different result if he had had any opportunity to rebut them.

## II.

Army Regulation 135–91, ¶ 20,[2] provides for appeals of involuntary orders

---

1. The government argues that appellant would have been permitted to see the materials but that he simply never requested permission. However, the affidavit submitted by the government makes clear that permission would have been granted only "on the condition that he described the documents that he desired." Rohe could not ask to see documents he was not aware of, and therefore this opportunity hardly enabled him to respond to the adverse allegations.

2. The regulation reads in pertinent part:
   "20. Appeals. a. *General.* An individual who has been denied a requested discharge or delay in order to active duty may appeal such denial. The appeal will be submitted within 15 days of the member's receipt of a denial; it will explain those facts pertinent to his case which he feels were not fully considered, and may include

any additional appropriate evidence which the applicant may wish to present.

. . . . .

"b. *How submitted.* Requests for appeals will be submitted through the unit commander to the commander having authority to approve discharges or delays as prescribed in paragraphs 16a and 19a as appropriate.
"c. *Authority to act on appeals.* The approving authority may act on such appeals when the decisions are favorable to the individual concerned. When denial of an appeal is indicated, however, he will forward the request and pertinent records, together with his recommendations, to Headquarters, Department of the Army for final determination as follows:

. . . . .

   (2) *Denial of appeal for delay.*

. . . . .

of reservists to active duty. The regulation does not explicitly require that the appellant be informed of adverse allegations placed in his record. Rohe argues that such a right is necessary to enable him to "explain those facts pertinent to his case" and to make the appeal meaningful.

◼ Even in military law, where the scope of due process is not so great as in other areas of the law, the right to file an appeal and to make a statement

> "includes the right to file a meaningful statement, one based on all the facts in the file and made with awareness of the recommendations and argments to be countered." Gonzales v. United States, 348 U.S. 407, 415, 75 S.Ct. 409, 414, 99 L.Ed. 467 (1955).

In *Gonzales* the Court found this right "implicit in the Act and Regulations— viewed against our underlying concepts of procedural regularity and basic fair play." Id. at 412, 75 S.Ct. at 412. See also United States v. Purvis, 403 F.2d 555, 562 (2d Cir. 1968); Crotty v. Kelly, 443 F.2d 214 (1st Cir. 1971).

(b) Area commanders and CG, USAAC, will forward denial of appeals for delay to the Commanding Officer, U. S. Army Reserve Components Personnel Center, Fort Benjamin Harrison. IN 46249 for processing under AR 601–25.
"d. *Appeal of involuntary order to active duty.* If an individual appeals his involuntary order to active duty for reasons other than those specified in this regulation, the denial of such appeal will be forwarded to CO, USARCPC in accordance with c(2)(a), or (b) above as appropriate. The member's DA Form 201 (Military Personnel Records Jacket, U. S. Army) will be forwarded in all appeal cases.
"e. *Appeal board.* The Commanding Officer, U. S. Army Reserve Components Personnel Center, will convene an appeal board to determine findings and submit recommendations to him on denials of appeal of involuntary order to active duty submitted under this regulation. The board proceedings will be as prescribed by the Commanding Officer, U. S. Army Reserve Components Personnel Center. The provisions of AR 15–6 will not be applicable to such proceedings."
A.R. 15–6 provides in part that the "individual who is the subject of the investigation

◼ The government argues that *Gonzales* does not apply here because it involved an application for conscientious objector status. Although the scope of due process may be different in conscientious objector cases, nothing cited by the government carries the distinction so far as to deny a reservist the right to respond to adverse allegations in an appeal under A.R. 135–91, ¶ 20.[3]

The government also argues that, even if appellant had a right to notice of the adverse statements, denial of that right was harmless because appellant already knew that the recommendations of his unit commander would be unfavorable and because the statements were of little importance.[4] Although appellant might have anticipated that the unit commander would recommend denial of his appeal, he could not anticipate that the unit commander would also submit statements containing damaging factual allegations from other persons in the unit and the police department. That the Assistant Adjutant General requested the materials seems itself to verify their importance to the determination of Rohe's appeal.[5] The district court apparently

will be provided an opportunity to review all relevant material in the file" and be "permitted to rebut any adverse evidence."

3. Appellant does not claim, and we do not hold, that the regulation violates due process. We merely hold, as did the Supreme Court in *Gonzales*, that the right to respond to adverse allegations is implicit in a regulation granting a right to appeal.

4. The cases on which the government relies are inapposite. In Nurnberg v. Froehlke, 489 F.2d 843, 848 (2d Cir. 1973), we found that the report which petitioner had not been shown contained no point which he did not already know. Here the statements added much which appellant did not know was in the record.

5. The district court relied heavily on the provision in A.R. 135–91 that the requirement of A.R. 15–6 to provide an "opportunity to review all relevant material in the file" will not be applicable (note 2). Here, however, the material to which petitioner claims he was entitled was in the nature of additional charges and factual allegations which he should have been given an opportunity to answer.

took the view that Rohe's claims were not important because it was undisputed that he was fit to report to summer camp on June 27 but failed to do so. Even if this is true, Rohe's claims might be relevant to whether two years of active duty or two weeks of summer camp with another unit was the more appropriate disposition of his case. In any event, the significance of Rohe's claims should be decided through the military appeals process and not by the federal courts.

We therefore reverse and remand with directions to enter an order enjoining respondents from ordering appellant to involuntary active duty until his appeal has been determined in accordance with this opinion.