James PAPAIOANNOU, alias John Doe, Petitioner-Appellant,

v.

COMMANDING OFFICER, 1ST U.S. ARMY, etc., et al., Respondents-Appellees.

No. 74–1344.

United States Court of Appeals, First Circuit.

Argued Jan. 6, 1975.

Decided Jan. 29, 1975.

Ronald J. Resmini, Providence, R. I., with whom Resmini, Fornaro & Colagiovanni, Providence, R. I., was on brief, for appellant.

Constance L. Messore, Asst. U. S. Atty., with whom Lincoln C. Almond, U. S. Atty., was on brief, for appellees.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

PER CURIAM.

Petitioner, who enlisted in the Rhode Island National Guard, challenged the validity of his call to active duty by a petition for both habeas corpus and mandamus. He claims that his activation under 10 U.S.C. § 673a, based upon his having five or more unexcused absences from training assemblies within a year, was illegal in that his unit commander did not follow Army Regulation 135–91, which requests, prior to activation for unsatisfactory participation, a determination whether "any cogent or emergency reasons existed which prevented the member from attending." Petitioner asserts that an inquiry would have revealed that he was suffering from a condition requiring psychiatric care which prevented him from attending the training session.*

The district court granted the government's motion to dismiss, reasoning that since petitioner was in an A.W.O.L. status he was seeking to invoke the processes of the law while flouting them, and thus brought himself within the holding of United States ex rel. Bailey v. U. S. Commanding Officer, 496 F.2d 324 (1st Cir. 1974). There we held that a habeas petitioner who, while eluding military authorities, claimed to be in custody for purposes of his writ, was disentitled to call upon the resources of the court. Here, however, petitioner is not playing hide-and-seek with the authorities. Since October 3, 1973 his address in Rhode Island has been known to Army authorities. His suit simply seeks a determination of the validity of his order to active duty before the order is carried out. To say that because the Army has classified him as A.W.O.L. he is beyond the reach of the court under these circumstances is to prejudge the merits of his case.

■ While, as we noted in *Bailey, supra,* we have doubts as to whether petitioner can be said to be in such custody that habeas will lie, there is no doubt that mandamus is a proper action to test the validity of his activation order. 28 U.S.C. § 1361; Sledjeski v. Commanding Officer, 478 F.2d 1147 (2d Cir. 1973); Lovallo v. Froehlke, 468 F.2d 340 (2d Cir. 1972); Nixon v. Secretary of Navy, 422 F.2d 934 (2d Cir. 1970); Schatten v. United States, 419 F.2d 187 (6th Cir. 1969); United States ex rel. Schonbrun v. Commanding Officer, 403 F.2d 371 (2d Cir. 1968).

In this case petitioner, who had served for fourteen months in the Army Reserve, enlisted in the Rhode Island National Guard in February, 1973, signifying at the time that he understood his attendance obligations, the sanctions for their violation, and his duty to keep his unit advised of his mailing address. After attending training meetings in the spring, with several unexcused absences, and a two week training session between July 14 and July 28, 1973, petitioner was absent from training assemblies on August 29, September 5, 8, and 9. Notices that these were unexcused were sent to petitioner on August 29, September 6, and September 10. They were sent to the address petitioner had always used— his parents' address. But they were returned unclaimed. On October 3 petitioner, in claiming a pay check, informed his unit of his new address. On October 29 petitioner was notified of his commanding officer's recommendation that he be ordered to active duty for unsatisfactory participation and of his right to appeal.

---

\* Petitioner's complaint includes other claims which, from a scrutiny of the existing record, appear insubstantial. One was a claim that orientation procedures required by 1A Supplement 1 of AR 135–91 were not followed. A government affidavit asserts that this regulation is inapplicable to petitioner. Another claim is that petitioner was not advised as to his rights of appeal. No particular provision of AR 135–91, alleged to be violated, is cited. The record shows that petitioner was in-

formed of his right to appeal and did file a letter of appeal, although without any supporting documentation. A third allegation could perhaps be interpreted as asserting that notices of petitioner's unexcused absences from drill were not properly addressed. As our opinion notes, *infra,* the record indicates that the address used was that given the unit by petitioner, who only belatedly gave information as to a new address.

On November 7 petitioner wrote his unit commander, stating that he wished to appeal, that he was having an identity crisis and wished a psychiatric examination, and that he thought it might be unconstitutional for a guardsman to be activated in time of peace. On November 13 the unit commander recommended that the appeal be denied, stating that petitioner had "done all he could to make a mockery out of the system", that the unit had "tried many avenues, including physically escorting [petitioner] to drill to improve his attendance", and that petitioner had gone so far as to berate the commander's mother on the telephone at a late hour for his having to attend drills. Superior officers approved this recommendation, with the Adjutant General of Rhode Island giving his endorsement, noting the absence of any evidence from a physician indicating a psychiatric disorder.

Meanwhile, in the processing of petitioner's appeal, his unit commander was asked for a determination in accordance with Army Regulation 135–91. The response was that to the best of his knowledge no cogent or emergency reason existed which would excuse the absences. Finally, on March 19, 1974, a Delay Appeal Board of the Army found that all administrative prerequisites had been met, that no reasons justifying absences had been presented, and that petitioner's fitness for military service would be determined after a complete medical examination upon petitioner's entering active duty. The appeal was denied.

 On these facts, taken from the Army's files, the district court, although dismissing the complaint as we have noted, felt that summary judgment should not be granted since factual issues remained open. The question is a close one: was there such a determination of the absence of cogent or emergency reasons preventing petitioner's attendance as is contemplated by AR 135–91? We are informed by affidavit that a slightly more stringent version, 1A Supplement to AR 135–91, requiring the unit commander to reflect the action taken to determine if any cogent or emergency reasons existed, applies to members of the Army Reserve but not of the National Guard. We are also aware of the limitations on courts in reviewing decisions of the military; they can require that judgments be made if called for by regulations, but cannot dictate that the process lead to a particular result. Nixon v. Secretary of Navy, *supra.* Nevertheless, we cannot say that the government's case has been established as a matter of law. Given the district court's greater opportunity to ascertain all the pertinent facts, we think it appropriate that it determine whether, upon such facts, there was compliance with AR 135–91. We therefore remand to the district court for resolution of that issue after further proceedings.

Judgment vacated; remanded for further proceedings consistent with this opinion.