Russell PETERS, Petitioner,

v.

SECRETARY OF ARMY, Clifford Alexander, or his successor,

and

Commanding Officer, United States Army, Headquarters, 961 Engineering Battalion, 5326 West Silver Spring Drive, Milwaukee, Wisconsin 53218,

and

Commanding Officer, Department of Army, Company D, 961 Engineering Battalion, United States Army Reserve Center, Pewaukee, Wisconsin 53072, Respondents.

No. 77-C-145.

United States District Court, E. D. Wisconsin.

April 19, 1978.

Curry First, Milwaukee, Wis., for petitioner.

William J. Mulligan, U. S. Atty., by Lawrence O. Anderson, Asst. U. S. Atty., Milwaukee, Wis., for respondents.

REYNOLDS, Chief Judge.

Petitioner Russell Peters has filed a petition for writ of habeas corpus or mandamus pursuant to 28 U.S.C. § 2241(a), (c)(1), and (c)(3); 28 U.S.C. § 1331; 28 U.S.C. § 1361; and 28 U.S.C. § 1651, alleging that his reassignment from the Army Reserves to active duty was in violation of administrative and constitutional due process and regulatory rights under Army Regulation ("AR") 135–91. On March 17, 1977, the Court with the consent of the Government entered a temporary restraining order in petitioner's favor pending disposition of this action on the merits. Both parties thereafter filed motions for summary judgment. For the reasons hereinafter stated, the petitioner's motion will be denied and the respondent's motion will be granted.

There are no material facts in dispute. Petitioner enlisted in the United States Army Reserves on November 2, 1971, for a six-year term. On that same day he executed a "Certificate and Acknowledgement of Service Requirements for Individuals Enlisting in the United States Army Reserve Under the Reserve Enlistment Program" which provided in part:

> "Enlistment under this program requires that you agree to participate satisfactorily in the Ready Reserve during the entire period of your enlistment in accordance with rules and regulations now in effect or which may be hereafter placed into effect by proper authority. Satisfactory participation in the Ready Reserve currently is defined as follows:

> \* \* \* \* \* \*

> "5. You will be required to attend all scheduled unit training assemblies (at least 48 per year) unless you are excused by proper authority. If you accrue 5 or more unexcused absences during any continuous 365 day period, you may be declared an unsatisfactory participant. \* \*

> \* \* \* \* \* \*

> "10. \* \* \* If you fail to participate satisfactorily for any of the reasons I have explained or which may be placed into effect hereafter by proper authority, you may be declared an unsatisfactory participant and ordered to involuntary active duty for a period of not more than 24 months \* \* \*. \* \* \* \* "

Army Regulation 135–91 ¶ 5d(2) further defines "satisfactory participation" as:

> "Attendance at all scheduled unit training assemblies as a member of a paid drill unit of the Army National Guard or Army Reserve, unless excused by proper authority as provided herein."

Army Regulation 135–91 ¶ 12(b) states:

"A member who, without proper authority, fails to attend a scheduled single unit training assembly (UTA) will be charged with one unexcused absence. A multiple unit training assembly (MUTA) is a combination of unit training assemblies; * * *."

Army Regulation 135–91 ¶ 9a, as amended August 1972, defines excused absences as follows:

"(3) * * * [F]ailure to attend scheduled drills * * * because of sickness, injury, or some other circumstances beyond the individual's control. * * *

"(4) A member excused for the reasons shown above will substantiate the reason for absence by appropriate certification from a doctor or medical officer or affidavits when required by the unit commander. When such documents are required by the unit commander they must be received within 14 days of the absence."

Petitioner did not attend his unit drill on June 28, 1975. Petitioner's unit commander, Captain Patch, thereafter informed petitioner of this absence by letter dated July 6, 1975, warning him that should he be classified as an unsatisfactory participant, he would be involuntarily ordered to active duty, and advising him that if the absence was beyond his control, then he must furnish affidavits or certificates within 14 days prepared by a person having knowledge of the circumstances or by a doctor or medical person if the absence was due to medical reasons. On July 19 and 20, 1975, petitioner also failed to attend two multiple drill sessions. By letter dated July 22, 1975, Captain Patch again informed petitioner of his absences, including the absence of June 28, 1975, and again requested petitioner to present affidavits or certificates explaining such absence if due to circumstances beyond his control within 14 days. Both letters were sent by certified mail and the mail slips indicate that petitioner received them personally. He did not, however, respond in any manner. By affidavit dated April 29, 1977, Captain Patch also asserts that he requested petitioner's platoon sergeant,

Sergeant William Rose, to contact petitioner by phone, but that Sergeant Rose was unable to reach the petitioner. On October 6, 1975, Captain Patch wrote to the petitioner informing him that in view of his failure to comply with the satisfactory participation requirements "and under the provisions of AR 135–91, you will be required to enter on active duty on or about 30 days after this notification or as soon as possible thereafter."

Petitioner claims that the procedure outlined above was insufficient to satisfy the requirements of AR 135–91 ¶ 12e(2), which provides in part:

"12. Unexcused absences from unit training assemblies. * * *

"e. In addition to the orientation requirements specified in paragraph 13, the unit commander will—

* * * * * *

"(2) If the absence(s) charged will result in a total accrual of five or more unexcused absences in a 1-year period, determine if any cogent or emergency reasons existed which prevented the member from attending. If no such reasons existed, he will forward the member's Military Personnel Records Jacket to the appropriate area commander * * requesting that he be ordered to active duty as prescribed in a above."

Petitioner claims that this regulation requires the unit commander to personally contact the individual who is alleged to have five unexcused absences. It is undisputed that at no time did either Captain Patch or one of his subordinates personally contact the petitioner. In support of his claim, petitioner cites *Papaioannou v. Commanding Officer, 1st U. S. Army*, 509 F.2d 692 (1st Cir. 1975); *Hall v. Fry*, 509 F.2d 1105 (10th Cir. 1975), and *Feeny v. Smith*, 371 F.Supp. 319 (D. Utah 1973).

■ The Court is of the opinion that AR 135–91 ¶ 12e(2) does not require an individual's commanding officer to contact him personally. Instead, it requires only that the commanding officer "determine," in some manner unspecified, "if any cogent or emergency reasons existed which prevented

the member from attending." Under the circumstances of this case, the Court believes that Captain Patch, having twice written to the petitioner and having twice received no response, was entitled to infer that no response would be forthcoming and that no cogent or emergency reasons existed which had prevented petitioner's attendance.

The cases cited by petitioner do not compel a contrary result. *Papaioannou v. Commanding Officer, 1st U. S. Army*, supra, held that there were insufficient facts in the record to determine whether AR 135–91 ¶ 12e(2) had been satisfied, and in *Hall v. Fry*, supra, the Court found that no attempt whatsoever had been made to contact the individual there involved, and stated that the regulation requires that the unit commander "make at least some sort of a check to determine if an absent Guard member had a cogent reason for his absence *before* any request for activation is initiated \* \*." 509 F.2d at 1109. In that case it appears that the Guard member was informed of his absences contemporaneously with his notice of certification for active duty. Finally, in *Feeny v. Smith*, supra, while the Court held that an effort to comply with AR 135–91 ¶ 12e(2) does not constitute compliance in view of the purpose of the regulation which is to ensure that all of the facts are available before an individual is ordered to involuntary active duty, it is clear in that case that although the individual was sent letters requesting him to explain his absences after they occurred, he did not receive the letters. Further procedural deficiencies occurred in the appeal process and possibly in the orientation program as well. Thus, the unsatisfactory compliance with AR 135–91 ¶ 12e(2) which the court found in *Feeny* was held to be only "part of a larger picture of noncompliance by the respondents with their regulations with respect to the procedure required in handling a matter of this kind." 371 F.Supp. at 326. The Court also stated at 330:

"Although failure of orientation and specific notice of the time limitation on excuses may not be prejudicial in light of the circumstances of this case, the failure of meaningful administrative appeal and the effect thereof upon the meaningfulness of this review, together with the inadequacy of the Army's investigation concerning the reason for Feeny's fifth absence, do amount to prejudicial error which has deprived Feeny of the fundamental protection afforded by the Due Process Clause."

■ In *Schulz v. Resor*, 332 F.Supp. 708 (E.D.Wis.1971), this Court held in a case similar to this action that where the petitioner, subsequent to being absent without notice, had been warned four times by registered mail to submit excuses for his absence if he had them, the determination thereafter made that the absences were unexcused was purely ministerial as opposed to discretionary in view of AR 135–91 ¶ 9a(4) which imposes on the individual the duty of coming forward with certificates or affidavits to justify an unexplained absence, and therefore the Court was without authority to overturn the finding of the Army Appeal Board that the petitioner was subject to involuntary active duty. The Court was not specifically presented with the issue now raised of alleged noncompliance by the unit commander with AR 135–91 ¶ 12e(2). However, the Court is convinced that by serving notice on petitioner by certified mail after his unexplained absences of the requirement that he submit some justification for his absences, petitioner's unit commander in this case has complied with the duty imposed on him by AR 135–91 ¶ 12e(2). The petitioner's claim that by delegating to the platoon commander the duty of attempting to reach petitioner by telephone the unit commander failed to comply with the regulation is frivolous. Army Regulation 135–91 ¶ 12e(2) requires that the unit commander make the determination of whether or not an absence is excusable; it does not require him personally to collect or attempt to collect all of the information on the basis of which the final determination will be made. The petitioner's allegation that the defendant failed to comply with army regulations is without merit.

Petitioner also claims that he was denied due process in the course of the appeal proceedings subsequent to his receipt of notification of certification for active duty, which notification was mailed to him on October 6, 1975. Again, the facts are not in dispute. On October 6, 1975, Captain Patch wrote to the petitioner notifying him of his certification for active duty. On October 10, 1975, petitioner wrote a letter in explanation of his absences. On November 26, 1975, petitioner was again notified that he was being placed on active duty. On January 23, 1976, petitioner was informed by the Fifth United States Army at Fort Sam Houston, Texas, that he had been recommended for involuntary active duty and that he could submit an appeal to his unit commander within fifteen days. Petitioner submitted a letter of appeal of February 11, 1976, which letter was forwarded along with the recommendations of intermediate commanders through the chain of command to Commander, United States Army Reserve Components Personnel Center. Petitioner's appeal was returned to his unit for clarification of whether or not he had submitted any doctor's excuses for his absences in June and July of 1975. The unit commander on April 10, 1976, responded that the petitioner had provided no doctor's excuses for the absences.

On September 17, 1976, the "AR 135–91 Appeal Board" met and recommended that petitioner's appeal be denied. Its recommendation was approved by order of the Secretary of the Army on September 27, 1976. Petitioner was notified of such disapproval on October 6, 1976, and on November 9, 1976, he requested the Delay Appeal Board to reconsider its decision. Brigadier General Robert Young, Commanding Officer of the Reserve Components Personnel and Administrative Aides, contacted petitioner's attorney on December 2, 1976, to inform him that the request for reconsideration was denied but that petitioner could present further evidence to the Board by January 10, 1977. On January 7, 1977, petitioner submitted an affidavit and other documents to the Board, and on January 19, 1977, the denial of his appeal was affirmed

by Brigadier General Young. On February 28, 1977, a new Board met and reviewed petitioner's appeal on the basis of documents already submitted and recommended that disapproval of petitioner's appeal not be overturned. On March 10, 1977, petitioner commenced this lawsuit, and on March 23, 1977, he was notified that his appeal had been disapproved by the Department of the Army.

Petitioner asserts three basic claims of error during the appeal process: (1) that he was not given the opportunity to review a critical analysis prepared on January 13, 1977, by military physician Colonel Siegal of the diagnosis and prognosis by petitioner's physician, Dr. Brockway (Record 44, 105–106); (2) that he was not given an opportunity to review the recommendation of the second Appeal Board which was submitted to the convening authority on March 11, 1977 (Record 29–30); and (3) that the recommendations of the first and second Appeal Boards, issued on September 17, 1976, and February 28, 1977, respectively, did not state reasons for the recommendations of denial, but rather stated conclusions only, and therefore denied petitioner effective review in this court.

■ In regard to petitioner's first and second claims, AR 135–91 does not provide that an individual who is appealing an order to involuntary active duty shall be given the opportunity to review all material in his appeal file. In fact, AR 135–91 ¶ 20 provides specifically that AR 15–6 shall not apply to Appeal Board proceedings during such appeal. Army Regulation 15–6 provides a right of access to all relevant material in an individual's file. In *Rohe v. Froehlke*, 500 F.2d 113 (2d Cir. 1974), the Court held that despite the inapplicability of AR 15–6, *Gonzales v. United States*, 348 U.S. 407, 75 S.Ct. 409, 99 L.Ed. 467 (1955), requires that the right of appeal during military proceedings " 'includes the right to file a meaningful statement, one based on all the facts in the file and made with awareness of the recommendations and arguments to be countered.' " 500 F.2d at 116. However, the Court limited its hold-

ing to material "in the nature of additional charges and factual allegations which [petitioner] should have been given an opportunity to answer." 500 F.2d at 116, n. 5. The Court suggested, for example, although it did not decide, that an adverse recommendation of a unit commander might be anticipated by a petitioner and therefore denial to him of the right to see such material would be harmless error.

In this case the material which petitioner claims he was not shown contained no additional charges or factual allegations. The second Appeal Board recommendation was merely a recapitulation of the recommendation of the first Appeal Board. The so-called "critical analysis" of Dr. Siegal, M.D., states essentially that the diagnosis of Dr. Brockway, submitted by petitioner in explanation of his July 19 and 20, 1975, absences, was insufficient to enable Colonel Siegal to determine whether or not petitioner's gastritis was sufficiently disabling to prevent him from attending the unit sessions on July 19 and 20, 1975. The Court does not consider that such memorandum constitutes either an additional charge or an adverse factual recommendation.

As to petitioner's final claim that the Appeal Board twice failed to provide reasons for its recommendations of denial, this Court held in *Donahue v. Secretary of Defense*, Civil Action No. 73–C–96 (E.D. Wis. Jan. 24, 1977), that due process requires that the Delay Appeals Board set forth factual considerations upon which it bases its decision. In that case the Board had listed petitioner's 13 defenses and then stated simply that numbers 1–11 were untrue, and that numbers 12 and 13 were probably untrue and in any case were not prejudicial.

In this action, in contrast, while the Board did not perhaps provide as complete an explanation as would be desirable, it did set forth in both instances the documents from the file on which it relied and the reason for its recommended denial. In the first recommendation, the Board found that petitioner presented no evidence in support of his claimed medical excuses or personal problems, and none in support of the claimed hardship which an assignment to active duty would entail. In the second recommendation the Board found that "because of the contents of the 22 July 1975 notice and the time lapse (2 to 3 months) between that notice and the request for AD orders, proper investigation has occurred." Under the circumstances of this case, the Court finds such explanation to have been sufficient to comply with due process.

For the foregoing reasons,

IT IS ORDERED that the motion of the respondents Secretary of Army, et al., for summary judgment be and it hereby is granted.

IT IS FURTHER ORDERED that the motion of the petitioner Russell Peters for summary judgment be and it hereby is denied.

IT IS FURTHER ORDERED that petitioner's application for writ of habeas corpus and for relief in the form of mandamus be and it hereby is denied.