UNITED STATES of America ex rel.
Francis J. SLEDJESKI

v.

COMMANDING OFFICER, ARMED FORCES or The Secretary of the Navy, or his Agents or Servants, or the Commandant of the Marine Corps, or his Agents and/or Servants, Commanding General, Fourth Marine Division or his Designee.

Civ. No. B–434.

United States District Court,

D. Connecticut.

Jan. 27, 1972.

Stephen M. Seelig, Wofsey, Rosen, Kweskin & Kuriansky, Stamford, Conn., for petitioner.

Stewart H. Jones, U. S. Atty., Peter A. Clark, Asst. U. S. Atty., New Haven, Conn., for respondent.

## MEMORANDUM OF DECISION

ZAMPANO, District Judge.

The petitioner, a Marine Corps reservist, seeks habeas and injunctive relief from an order assigning him to involuntary active duty. He does not challenge the military's determination that he was guilty of unsatisfactory participation in the Ready Reserve within the meaning of 10 U.S.C. § 673a [1], but does contend his procedural rights under applicable statutes and regulations were violated in a manner which caused him substantial prejudice. See Smith v. Resor, 406 F.2d 141, 146 (2 Cir. 1969).

In the fall of 1971, investigation revealed that the petitioner, Francis J. Sledjeski, forged or caused to be forged on a doctor's stationery certain medical reports which he then submitted to the military to explain his absences from scheduled drills. On November 2, 1971,

---

1. Section 673a reads:

§ 673a. Ready Reserve: members not assigned to, or participating satisfactorily in, units

(a) Notwithstanding any other provision of law, the President may order to active duty any member of the Ready Reserve of an armed force who—

(1) is not assigned to, or participating satisfactorily in, a unit of the Ready Reserve;

(2) has not fulfilled his statutory reserve obligation; and

(3) has not served on active duty for a total of 24 months.

(b) A member who is ordered to active duty under this section may be required to serve on active duty until his total service on active duty equals 24 months. If his enlistment or other period of military service would expire before he has served the required period under this section, it may be extended until he has served the required period.

(c) To achieve fair treatment among members of the Ready Reserve who are being considered for active duty under this section, appropriate consideration shall be given to—

(1) family responsibilities; and

(2) employment necessary to maintain the national health, safety, or interest.

Captain R. C. Cormier, the Commanding Officer of Sledjeski's reserve unit, informed him by letter that he was being processed for active duty because of his unsatisfactory performance as a member of the Marine Corps Reserve. The letter further advised that he could make a statement on an enclosed form (which he did not do) and that he was to appear before Captain Cormier on November 6, 1971. On that date, Sledjeski was advised of his rights, and was asked if he wished to say anything at all in his own behalf. He replied that he understood his rights and that "On advice of counsel, I have been instructed not to say anything." Despite this, Captain Cormier for over 30 minutes carefully reviewed the charges, explaining to him in detail the action contemplated. Except for an occasional nod of the head, Sledjeski refused to offer any comment. As he was leaving, Sledjeski was again asked if he wished to say anything that might influence the Commanding Officer's decision. Sledjeski continued to remain silent. At no time during this session did Captain Cormier specifically request information with respect to the petitioner's family, job, or any hardship he might suffer if activated.

The next day Captain Cormier discussed the matter at length with Major James McDonough, the unit's inspector-instructor. They testified they reviewed Sledjeski's file which included an "emergency data card" completed by the reservist on July 10, 1971, which indicated he was married but had no children. (In fact Sledjeski has an 18 month old child). Based upon the information in their possession, they concluded that Sledjeski would suffer no extraordinary hardship as a result of the activation, and that his involuntary active duty orders should be processed. On December 23, 1971, Sledjeski received written notification to report for active duty on December 27, 1971. This action followed; hearings on the petition were held before this Court on January 3 and 4, 1972. Briefs now having been filed, the matter is ripe for disposition.

■ The petitioner's primary contention is that the military authorities failed to give due consideration to the personal hardship which will result from his activation. He first relies on the provision in § 673a which states that, in the interest of fairness, appropriate consideration shall be given to "family responsibilities" and to "employment necessary to maintain the national health, safety, or interest" before a member of the Ready Reserve is activated. Sledjeski claims that if the military conducted an investigation to obtain information beyond that secured from his interview and from his military file, it would have revealed that he was employed as a liquor salesman, earning substantially more than a serviceman, and that he had a "sick" wife and one child. He argues that the failure of the military to institute an independent inquiry constituted a violation of his due process rights. The Court disagrees.

There is no question that both Captain Cormier and Major McDonough weighed the potential hardship burden to Sledjeski resulting from active duty and determined it would not be disproportionate to that of any other Marine on active duty. They arrived at their decision based upon the evidence presently before them. They had every right to rely on the data in Sledjeski's military file, most of which he himself recorded. Company Order 1571, dated August 16, 1971, specifically instructed that a reservist must maintain satisfactory participation, that failure to do so may result in activation, and that problems should be reported immediately so that the appropriate authorities will have a "thorough understanding of his situation at all times." There is no indication that Sledjeski, in compliance with this rule, ever disclosed he had any particular personal hardship which should be noted in his official records in the event of activation. Moreover, and more importantly, Sledjeski had every opportunity at the November 6th hearing to disclose "anything in his defense that would make his commander change

his mind." It was his choice "to say nothing."

Neither the language of the statute nor the relevant case law, see, e. g., Metz v. United States, 304 F.Supp. 207, 212 (W.D.Pa.1969); Sullivan v. Cushman, 290 F.Supp. 659, 661 (D.Mass. 1968); Winters v. United States, 281 F.Supp. 289, 299–300 (E.D.N.Y.1968), aff'd, 390 F.2d 879 (2 Cir.) (per curiam), cert. denied, 393 U.S. 896, 89 S.Ct. 188, 21 L.Ed.2d 177 (1968), mandates that when a reservist is being considered for activation, a separate, independent investigation must be conducted by the military in order to obtain all possible facts of hardship not otherwise revealed in the reservist's file or by the reservist at his hearing. In any event, even assuming a formal defect in the activation procedure in this case, Sledjeski presented no evidence that his employment as a salesman was "necessary to maintain the national health, safety or interest", or that his "family responsibilities" merited an exemption from the activation orders which followed from his flagrant disregard of the requirements of his reserve service.

Sledjeski next contends the military failed to follow Marine Corps Order P.1001 R.43, paragraph 2102(d), which requires that a Commanding Officer must "carefully investigate all personal hardship problems . . . *claimed* by mandatory participants prior to a submission of a recommendation for involuntary active duty." (emphasis added). The short answer to this argument is that neither Sledjeski nor his attorney made any claim of personal hardship, although given ample opportunity to do so. In the factual circumstances of this case the Court is satisfied Sledjeski was provided with every consideration to which he was entitled under the applicable regulations. Judicial invalidation of Sledjeski's orders to report to active duty is not warranted.

Accordingly, the motion for habeas and injunctive relief is denied; the complaint is dismissed.