478 F.2d 1147
 UNITED STATES of America ex rel. Francis J. SLEDJESKI,
Petitioner-Appellant,
v.
COMMANDING OFFICER, ARMED FORCES or the Secretary of the
Navy, or his Agents or Servants or the Commandant of the
Marine Corps or his Agents and/or Servants, Commanding
General Fourth Marine Division or his designee, Respondents-Appellees.
 No. 474, Docket 72-1407.
 United States Court of Appeals,
Second Circuit.
 Argued Feb. 22, 1973.
Decided May 3, 1973.
 
 Stephen M. Seelig, Stamford, Conn., for petitioner-appellant.
 Peter A. Clark, Asst. U. S. Atty., D. of Conn., New Haven, Conn. (Stewart H. Jones, U. S. Atty., D. Conn., New Haven, Conn., of counsel), for respondents-appellees.
 Before FEINBERG, MULLIGAN and TIMBERS, Circuit Judges.
 MULLIGAN, Circuit Judge:
 This is an appeal from the denial of a petition for habeas corpus and for injunctive relief from an order assigning Private Francis Sledjeski, a Marine Corps Reservist, to involuntary active duty. Petitioner's motion for an order to show cause was filed on December 27, 1971 and amendments to the petition were filed on December 31, 1971 and January 12, 1972. After hearings held on January 3 and 4, the Hon. Robert C. Zampano, District Court Judge for the District of Connecticut, denied injunctive and habeas corpus relief on January 27, 1972 in a memorandum decision (336 F.Supp. 987, as supplemented by order of May 17, 1972) and judgment was entered dismissing the action on the merits. At a hearing in Judge Zampano's chambers on March 6, 1972, both sides agreed to a stay pending appeal and an order to that effect was entered on May 17, 1972. Remanded.
 
 
 1
 Sledjeski is a member of the Marine Corps Reserve in Hartford, Connecticut. He enlisted on January 3, 1966 and had served about five and one-half years of his six-year enlistment at the time of the incidents to be related. Sledjeski missed his annual training duty in the summer of 1971 and further skipped drills in September and October 1971, proffering a bogus phone call and forged letters from a physician, as a medical excuse for the missed drills. Sledjeski does not deny these contentions. On November 2, 1971 his Commanding Officer notified him by letter that due to his deliberate and planned nonparticipation, he was being processed for involuntary assignment for 18 months active duty. The third paragraph of the letter provided:
 
 
 2
 3. You are advised that you have a right to make a statement for inclusion in these proceedings. If you wish to make a statement, do so in the space provided on the enclosed endorsement form. If you do not wish to do so, check the appropriate block on the enclosed form, sign it and return it to me at First Muster on 6 November 1971.
 
 
 3
 Sledjeski did not complete the form and made no statement. The letter of November 2, 1971 made specific reference to the Marine Corps regulation authorizing his activation (Marine Corps Order P 1001 R. 43 (R.E.S.S.O.P.), Chapter 2). On November 6, 1971 Captain Cormier, appellant's Commanding Officer, who had signed the November 2 letter, interviewed him at his office in the drill hall. Sledjeski was again advised that he was being processed for involuntary active duty and was asked if he understood his rights in the matter. Sledjeski answered in the affirmative. He was advised that the letters from the doctor were forged, that he would not be permitted to make up the missed drills and that instead he would be recommended for active duty. Sledjeski testified that Captain Cormier asked if he could "review my rights or go over the rights-explain them to me. And I said no, because I wanted-I didn't want to say anything because I wanted counsel with me present when he did all of this." Captain Cormier testified that Sledjeski said that on advice of counsel he refused to say anything. He stood mute for the rest of the interview.
 
 
 4
 After the interview Captain Cormier conferred with Major McDonough, the unit's Inspector-Instructor, and reviewed the appellant's service record which contained a personal data card filled out by Sledjeski reciting that as of July 10, 1971, he was married but without children. The two officers discussed what hardship problems a married man in this situation would face in service and concluded that if he were reduced in rank from Lance Corporal to Private First Class, his base salary would be in excess of $400 per month which they considered not to be a hardship greater than that incurred by any citizen brought into the Armed Forces. On November 7, 1971 Major McDonough forwarded a letter to the Commandant of the Marine Corps recommending that the appellant be assigned to active duty and orders to that effect were issued on December 17, 1971.
 
 
 5
 Sledjeski's position below and on appeal is that he was never told and did not know that he had the right to make a hardship claim for personal considerations until after he had received his papers ordering him to active duty. He urges further that had he known, he would have advised his Commanding Officer that his wife had been discharged from a hospital after leg surgery in December, 1971; that they had a 16 month old child; that his wife could do no heavy work and that she could no support herself if he were called into active military service.
 
 
 6
 The first question raised on appeal is whether Sledjeski was denied due process of law because of the failure of the Marine Corps to consider and review his hardship claim in accordance with its regulations.
 
 
 7
 The statute authorizing the involuntary assignment of Reservists to active duty where their participation in the program has been unsatisfactory is 10 U.S.C. Sec. 673a which in subsection (c) provides:
 
 
 8
 To achieve fair treatment among members of the Ready Reserve who are being considered for active duty under this section, appropriate consideration will be given to-
 
 
 9
 (1) family responsibilities; and
 
 
 10
 (2) employment necessary to maintain national health, safety or interest.
 
 
 11
 The implementing regulation is Marine Corps Order P 1001 R.43, para. 2102(2)(d), which provides:
 
 
 12
 Commanding officers will carefully investigate all personal hardship problems or physical defects claimed by mandatory participants prior to submission of a recommendation for involuntary active duty. (emphasis added).
 
 
 13
 Sledjeski is a liquor salesman and there is no claim that his employment is related to the national health, safety or interest.
 
 
 14
 Sledjeski argues that he was never told that he could make a hardship claim and therefore made none. He states that the November 2 letter which provided him with the opportunity to make a statement was reasonably interpreted by him to mean a statement directed to the incident of the forged letter from the doctor which precipitated his activation. He claims that he also interpreted the questions of his Commanding Officer in the personal interview, to refer only to any statements which would explain or mitigate his behavior in escaping drills and annual training by deceitful means.*
 
 
 15
 The appellant here is hardly a sympathetic figure. His attempts to avoid the service for which he volunteered, were undeniably fraudulent. His "mute act" would further frustrate and discourage questioning as to possible family problems. His contention that his Commanding Officer's recommendation of November 7 contained an inaccurate statement, to wit, that he had no children, is also unappealing since the personnel file was based on information given by the Reservist and he apparently never advised the Marine Corps of the birth of his child. Moreover, Company Order 1571 R.1C, dated August 16, 1971, posted on the company bulletin board, distributed to available Reservists and read at the August drill, explicitly advised Reservists of their drill obligations and the alternative of active duty in the event of unexcused absence. Reservists were advised of specific grounds for excuse including hardship. We need not reach the question as to whether or not a Reservist must in all cases be advised of his right to make a hardship claim because of a factor here which in our view in any event mandates remand.
 
 
 16
 The court below made a supplemental finding of fact on May 17, 1972 which it incorporated in the memorandum of decision:
 
 
 17
 At no time during the call-up procedure did respondents orally advise petitioner that he had a right to make a hardship claim.
 
 In the decision is the further finding:
 
 18
 At no time during this session [Nov. 6, 1971] did Captain Cormier specifically request information with respect to the petitioner's family, job, or any hardship he might suffer if activated.
 
 
 19
 336 F.Supp. at 989.
 
 
 20
 Paragraph 1 of the letter of November 7, 1971 from Captain Cormier and Major McDonough to the Marine Corps Commandant on the other hand states:
 
 
 21
 As far as can be determined, no personal, family or economic hardship would exist if he is ordered to active duty. When questioned in this regard on 6 November 1971 SLEDJESKI refused to answer questions.
 
 
 22
 This paragraph is at odds with the findings of fact which indicate that he was never questioned as to hardship. Whether or not appellant's alleged hardship was significant enough to warrant total or partial relief from involuntary active service is of course a matter for the Marine Corps to decide and not the federal judiciary. All that we can determine is that in the absence of any questioning on the subject, the report of the Marine Corps officers to the Commandant was misleading. The Commandant could have assumed that Sledjeski was questioned explicitly on the subject but this did not occur. We do not believe that "appropriate" consideration was given to his claim.
 
 
 23
 It is well established that where the Armed Services have failed to follow their own regulations, federal courts have jurisdiction to review. Friedberg v. Resor, 453 F.2d 935 (2d Cir. 1971); Smith v. Resor, 406 F.2d 141 (2d Cir. 1969); Hammond v. Lenfest, 398 F.2d 705 (2d Cir. 1968). The court believes, however, that a proper respect for the rights of the petitioner as well as the prerogatives of the military dictate that we treat this habeas corpus petition as one for mandamus (28 U.S.C. Sec. 1361). Smith v. Resor, supra; United States ex rel. Schonbrun v. Commanding Officer, 403 F.2d 371 (2d Cir. 1968), cert. denied, 394 U.S. 929, 89 S.Ct. 1195, 22 L. Ed.2d 460 (1969). See also Schatten v. United States, 419 F.2d 187 (6th Cir. 1969). We therefore remand this matter to the District Court to direct the Marine Corps to permit the appellant here to make whatever hardship claim he may have so that it can be given appropriate consideration under applicable Marine Corps Regulations. The stay issued by the District Court in its order of May 17, 1972 shall continue in effect until the foregoing action is completed.
 
 FEINBERG, Circuit Judge (concurring):
 
 24
 I agree with the majority opinion as far as it goes, but I do not think it goes far enough. The majority does not reach the question whether a reservist must be advised of his right to make a hardship claim before his failure to do so may be regarded as a waiver. I would hold that such notification is required.
 
 
 25
 The Government argues that under the applicable Marine Corps regulation the reservist must affirmatively claim hardship and his commanding officer is not required to initiate, sua sponte, an investigation of the individual's personal circumstances. But in requiring that such a claim be made, the regulation appears to go further than the statute (10 U.S.C. Sec. 673a) and Executive Order on which it is based. Neither the statute nor the Executive Order specifically requires the reservist to "claim" hardship, although both impose on the Marine Corps a duty to give "appropriate" consideration to the possibility of hardship.[1] While it may be that the regulation, in placing on the reservist the burden of making the claim, is both sensible and consistent with the statute and Executive Order, a necessary corollary is that the reservist must be informed of his right to make such a claim. Appellant's attorney observed at oral argument that even criminal suspects are required to be informed of their legal rights. Though the analogy is obviously not exact, there is force to it. More exact and more forceful, however, is a comparison to the treatment accorded Selective Service registrants, who are routinely notified of their right to request a hardship or other deferment.[2] I see no persuasive reason why a Marine reservist should not be entitled to as much.
 
 
 26
 As for the specific facts here, the invitation in the November 2, 1971 letter to appellant to make a statement was certainly not adequate notice of his right to claim hardship. It was a reasonable assumption that the statement referred to was to be in explanation of his prior conduct. Moreover, Captain Cormier's question to Sledjeski at the interview-"Is there anything else you can tell me that would make this look other than it is . . . ?"-was very clearly addressed only to the matter of exculpation. Finally, the Company Order cited in the majority opinion makes no reference to a right to claim hardship when threatened with involuntary activation. It merely describes the standards and procedures for excused absences from drill and advises reservists that they must maintain "satisfactory participation" in scheduled drills or face involuntary activation. Although the order states that "problems" should be made known to platoon or company leaders, this clearly refers to difficulties in attending the drills, not in submitting to activation.[3]
 
 
 27
 Admittedly, Sledjeski cuts a less than heroic figure, and his "hardship" may perhaps have fallen short of that required. But such a claim would not have been frivolous. Moreover, the procedures involved here are also not worthy of praise, and by holding them to be improper we may ultimately benefit more deserving reservists. See McSweeney v. United States, 338 F.Supp. 350 (N.D.Ohio 1971) (enjoining Marine activation because Commanding Officer did not seek information relevant to hardship and was therefore unaware of relevant hardship circumstances); cf. Winters v. United States, 281 F.Supp. 289, 299-300 (E.D.N.Y.), aff'd, 390 F.2d 879 (2d Cir.) (per curiam), cert. denied, 393 U.S. 896, 89 S.Ct. 188, 21 L.Ed.2d 177 (1968) (upholding Marine activation despite failure to notify reservist of right to claim hardship, but emphasizing that record showed there would have been absolutely no basis for such a claim if one had been made).
 
 
 28
 At the very least, I would hold that if a reservist must claim hardship when faced with involuntary activation, he must also be clearly advised of his right to make the claim. However, since this appellant is now aware of that right and is to be allowed to exercise it, I concur in the majority disposition.
 
 
 
 *
 The testimony of Captain Cormier lends some credence to the claim:
 
 
 I
 looked at him and I said, "Is there anything you can tell me that would make this look other than it is," meaning the fraudulent letters that we had before us, "Is there anything you want to say in your behalf," and he nodded his head and at that time I became a little curt with him and I said, "Okay, that's all. Get out."
 
 
 [1]
 The statute provides:
 To achieve fair treatment among members of the Ready Reserve who are being considered for active duty under this section, appropriate consideration shall be given to-
 (1) family responsibilities; and
 (2) employment necessary to maintain the national health, safety, or interest.
 10 U.S.C. Sec. 673a(c). The Executive Order merely incorporates the text of the foregoing provision. Executive Order No. 11366, 32 Fed.Reg. 11411 (1967).
 
 
 [2]
 See Selective Service System Registration Questionnaire, SSLR 2156:3
 
 
 [3]
 In view of the irrelevance of the Company Order to the issue at hand, it is unnecessary to decide whether posting and reading an order that actually mentioned the right to claim hardship would be sufficient notice to a reservist who is subsequently considered for involuntary activation