**William W. ALSTON, Jr.**

v.

**James SCHLESINGER et al.**

**Misc. Civ. A. No. 73–148–C.**

United States District Court,
D. Massachusetts.

Jan. 7, 1974.

Proceeding on application for a preliminary injunction and on petition for writ of habeas corpus, or in the alternative, for a writ of mandamus challenging action of Army in ordering petitioner, a reservist, to active duty for failure to attend reserve drill meetings. The United States District Court for the District of Massachusetts, Caffrey, Chief Judge, held that petitioner was not entitled to discharge on theory of failure of Army to follow its own regulations in regard to notifying petitioner of absence from drills and consequences of such absences, nor was petitioner entitled to discharge on theory of allegedly sensitive employment.

**538**

Lawrence E. Katz, Cambridge, Mass., for plaintiff.

James N. Gabriel, U. S. Atty., Robert B. Collings, Asst. U. S. Atty., for defendants.

## OPINION

CAFFREY, Chief Judge.

This is a petition for writ of habeas corpus or, in the alternative, for a writ of mandamus. Petitioner is a resident of Massachusetts presently on active duty at the Research Institute of Environmental Medicine at the United States Army Natick Laboratories. Respondent James Schlesinger is the Secretary of Defense. The other respondents, identified by title rather than name, are the Commanding Officer, United States Army; Commanding Officer, Research Institute of Environmental Medicine, U. S. Army Natick Laboratories; and the Unit Commander, 323rd Maintenance Co.

The matter came before the Court at a hearing which, on motion of counsel for petitioner, was requested to be and is treated herein as a hearing on an application for preliminary injunction as well as a hearing on the merits of the application for both writs.

Petitioner enlisted in the Army Reserve on May 28, 1968 for a period of six years. On February 13, 1969 he executed a document captioned "Orientation Statement of Reserve Agreement Understanding" (PX 1, p. 14). In that document, petitioner acknowledged, *inter alia*:

> . . . I am required to participate satisfactorily in paid drill units of the Reserve Components for the full period of my Ready Reserve obligation.
>
> \* \* \* \* \* \*
>
> I understand that if I fail to attend prescribed unit training without proper authority . . . I will be ordered to active duty for twenty-four months . . .
>
> \* \* \* \* \* \*
>
> I further understand that it will be my responsibility to notify the unit commander in advance of change of address . . .
>
> \* \* \* \* \* \*
>
> I understand that absences from scheduled unit training assemblies . . . may be authorized by the unit commander for reasons of sickness, injury, emergency or other circumstances beyond my control when substantiated by affidavits or certified by a doctor or medical officer.

Petitioner served uneventfully and satisfactorily from May 28, 1968 until he suffered an injury to his shoulder while off duty in March 1969. Because of his physical condition he was excused from participation in weekly drills and from attending summer camp until November 1969, at which time he resumed attending weekly drills. Because of his physical condition he was given a Limited Duty Profile, U–3 with Code G limitation, and transferred to the 513th Maintenance Battalion. Petitioner re-

mained a member of the 513th Maintenance Battalion until he was transferred to the 323rd Maintenance Company on March 15, 1972.

On the basis of the testimony of Mrs. Mary Simpson, which I believe, I find that Mrs. Simpson, a civilian employee of the 513th Maintenance Battalion, as part of her regular duties placed a telephone call to petitioner at his place of employment at the Polaroid Corporation during the month of February 1972; that she called him at work because she was not able to reach him at the home telephone number which had been given to his unit by petitioner; that in the course of her conversation she advised petitioner that he had an obligation to regularly attend the weekly drills; that he had missed some drills and that he should come in and consult with his Commanding Officer relative to his missing drills; and that petitioner made no response to these suggestions from Mrs. Simpson who, I find, also directed him to send in a correct address if he was not still living at 10 Garrison Avenue, Somerville, at which address she had had difficulty in reaching him. She further testified, and I find, that she asked petitioner if he was still living at the Somerville address and he gave her without further explanation the ambiguous answer "Yes and No." Finally, I find that petitioner made no response to her instruction to send in a change of address form if, in fact, he had moved.

On the basis of petitioner's Exhibit 1, page 2, I find that no change of address was ever received by the unit.

Subsequent to his transfer from the 513th Maintenance Battalion to the 323rd Maintenance Company, petitioner attended only five drills which took place on three separate dates, namely, a double drill on March 19, 1972, a single drill on April 4, 1972, and a double drill on May 22, 1972.

After petitioner missed a double drill conducted on April 9, 1972, notices of his absence were sent to him by certified mail, to the address he had given

the unit, namely, 10 Garrison Avenue, Somerville. This letter was returned by the Post Office marked "unclaimed." Petitioner also missed a drill held on April 18, 1972, after which a certified letter was mailed to him at the 10 Garrison Avenue, Somerville, address. Petitioner did receive this notice, and the absence was excused by his Unit Commander upon his presentation of a doctor's letter explaining the cause of his absence on medical grounds. Thereafter, petitioner missed the following drills:

| Date: | Number of Drills | Petitioner's Ex. No. 1 |
|---|---|---|
| April 29, 1972 | 2 | p. 17 |
| May 9, 1972 | 1 | p. 19 |
| May 16, 1972 | 1 | p. 21 |
| June 6, 1972 | 1 | p. 23 |
| June 11, 1972 | 2 | p. 25 |
| June 13, 1972 | 1 | p. 27 |
| July 11, 1972 | 1 | p. 29 |
| July 25, 1972 | 1 | p. 31 |
| August 1, 1972 | 1 | p. 33 |
| August 15, 1972 | 1 | p. 35 |
| August 22, 1972 | 1 | p. 37 |
| September 5, 1972 | 1 | p. 39 |
| September 26, 1972 | 1 | p. 41 |
| October 1, 1972 | 2 | p. 43 |

Although on direct examination petitioner testified that he had never received any of the certified letters notifying him that he had missed the abovementioned drills, he did concede, with edifying candor, on cross-examination, that he received a number of notices from the Post Office to the effect that there was a certified letter for him being held at the Post Office, and he further conceded that there were more than five of those yellow slips left at his home by the mailman, despite which he never went to the Post Office to pick up any of the certified letters.

On the basis of the foregoing, having in mind his prior receipt of certified mail notifying him of unexcused absences from scheduled drills, and also having in mind his regular attendance at drills over a substantial period of time which obviously gave him a general familiarity with the conduct of Reserve affairs, I draw the inference that petitioner strongly and accurately suspected the source and nature of the certified

mail waiting for him at the Post Office. Specifically, I find that he deliberately kept himself ignorant of these written notices of unexcused absences on his part.

It is significant that on cross-examination petitioner also admitted that he knew when his unit was meeting and that he stayed away from weekly drills knowing where and when they were scheduled to be held. He further testified, in response to a question from the Court, that he made the following statements in a letter written by him on August 4, 1973 (PX–5): "I stopped going to meetings. My intention was to draw attention to the above issue . . . I took that risk because I honestly believed there was cause to be alarmed about the inattention to my medical problem." He also testified that the risk to which he made reference was the risk of being ordered to active duty for non-attendance at required drills.

Petitioner's contention herein, that he was ordered to active duty because of the denial of procedural due process, allegedly consisting of failure of the Department of the Army to take steps reasonably calculated to apprise him of his obligation to attend weekly drills and to apprise him of the consequences of failing to do so, I find to be totally without merit because I find that at all relevant times he had actual knowledge of both when and where drills of his unit were to be held and that he was fully aware of the consequences of his failure to attend without a valid and adequate excuse.

On this record it is clear that petitioner's unit sent certified letter after certified letter to the last address he had given the unit and that he deliberately failed and refused to pick up certified mail from the Post Office after being notified by his residential letter carrier that such mail was at the Post Office and could not be delivered to his home because of his absence therefrom at the time of regular mail deliveries.

In view of this conduct by petitioner I find no merit in his claim that he should

have been contacted telephonically by the unit, having in mind that he had an unlisted telephone at his home, that he was away from that home during normal business hours, and that Mrs. Simpson testified that she had great difficulty in reaching him at his place of employment at the Polaroid Corporation, and further having in mind that Mr. Donald Surette, Administrative Supply Technician of the 323rd Maintenance Company, testified that petitioner had given an erroneous telephone number for his place of employment, as a result of which, Surette testified, his attempts to contact petitioner at Polaroid were unsuccessful.

There was testimony from petitioner that he notified his unit of a change of address in September 1972, despite which the record shows that no change of address was ever received by the unit. Having in mind that as late as August 24, 1973, records of petitioner's employer still carried his home address as 10 Garrison Avenue, Somerville, I do not accept as true petitioner's contention that he notified the Post Office of his change of address in September 1972. This conclusion is buttressed by the fact that Exhibit 8 to the complaint displays a change of address for petitioner effective January 1, 1973.

Because of the unexplained absences, on November 20, 1972 petitioner's Unit Commander requested that active duty orders be issued to him. On December 11, 1972, Headquarters, First U. S. Army, mailed active duty orders to petitioner at his 10 Garrison Avenue, Somerville address, and on the same date First Army Headquarters also mailed to petitioner a written notice of his right to appeal those orders to active duty. Both notices were sent by certified mail but were not claimed by petitioner. On January 8, 1973, petitioner was mailed orders directing him to report on February 13, 1973 at the Reception Station, Fort Dix, New Jersey. These orders were likewise addressed to 10 Garrison Avenue, Somerville, and were returned "unclaimed." Petitioner did not report at Fort Dix until June 19, 1973. No

charges were preferred against him by the Army because of his delay in reporting. His reporting to Fort Dix in June of 1973 was a direct result of his being notified during a face to face visit by agents of the FBI that he had been ordered to active duty and was being carried as AWOL from Fort Dix. Approximately ten days after his reporting to Fort Dix petitioner was placed on leave and continued in a leave status until orders were cut on November 12, 1973 ordering him to active duty at the U. S. Army Natick Laboratories.

I rule that there is no merit or substance to petitioner's claim that he should be discharged because of the Army's failure to follow its own regulations. The only mandatory requirement vis-a-vis notifying a reservist of his absences from drills is that if personal contact is not made, or is impractical, letters must be mailed. The record is abundantly clear that letters were sent to petitioner by certified mail on a number of occasions, that the Post Office left slips at petitioner's place of residence advising him that certified mail was waiting for him at the Post Office, and that he voluntarily and deliberately refrained from going to the Post Office to acquire any of his certified mail. The failure to contact him by telephone is not violative of any mandatory requirement on the part of the Army and, if material, I find that the Army made reasonable attempts to contact him by telephone which were frustrated by his use of an unlisted residential telephone and his misinforming the Army as to his correct telephone number at his place of employment. The record belies the existence of any validity to his claim that the Army failed to notify him of his right to appeal the active duty orders. The letter so advising him was sent him on December 11, 1972 by certified mail and falls into the category of those letters which he deliberately opted not to receive.

With regard to petitioner's contention that he should be discharged because of his employment, suffice it to note that he voluntarily enlisted in the Reserves while employed by Polaroid, that Polaroid as his employer never requested that he be discharged in the national interest, and that petitioner himself likewise never requested a discharge on the grounds of his allegedly sensitive employment.

With further regard to the alleged denial of his right to take an administrative appeal, it should be noted that while petitioner was on the extended leave described above he did, in fact, communicate by way of appeal to the Inspector General of the Army who found his appeal without merit.

Lastly, it should be noted that although petitioner contends he was given an improper assignment in violation of his limited duty profile by the 323rd Maintenance Company, the Commanding Officer, Captain John S. Shea, testified that he stayed in close contact with the affairs of that company, that he regularly attended drills, and that at no time did petitioner ever complain to him as to the nature of the duties assigned him, nor, in fact, did petitioner ever communicate with him about anything.

In summary, I find and rule that there is no legal or factual merit to any of the contentions advanced by petitioner and, consequently, the application for mandamus, the application for writ of habeas corpus, and the motion for a preliminary injunction are denied.