Timothy Wayne HALL,
Plaintiff-Appellant,

v.

Edward R. FRY, Lieutenant General, the Adjutant General, State of Kansas, and Robert F. Froehlke, Secretary of Army, Defendants-Appellees.

No. 74–1132.

United States Court of Appeals,
Tenth Circuit.

Argued Nov. 14, 1974.

Decided Jan. 29, 1975.

Jim Lawing, Wichita, Kan., for plaintiff-appellant.

John T. Moore, Asst. Atty. Gen. (Vern Miller, Atty. Gen., and Jerry R. Shelor, Asst. Atty. Gen., on the brief), for defendant-appellee Edward R. Fry.

W. Irving Shaw, Asst. U. S. Atty. (Robert J. Roth, U. S. Atty., on the brief), for defendant-appellee Robert F. Froehlke.

Before LEWIS, Chief Judge, and BREITENSTEIN and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

This appeal concerns the involuntary activation into the United States Army of a member of the National Guard. Timothy Wayne Hall, a member of the Kansas National Guard, accumulated more than five unexcused absences from scheduled drills within a one-year period, and as a result thereof he was honorably discharged from the Guard, and at the same time was involuntarily activated into the United States Army. It is this latter fact which precipitates the present controversy.

Hall instituted the present proceedings in the United States District Court for the District of Kansas, seeking a declaration that his activating orders were invalid and enjoining his activation into the United States Army, thus restoring him to his status as an active member of the Guard. The gist of Hall's complaint was that in activating him the defend-ants, i.e., the Kansas National Guard and the United States Army, had failed to follow their own rules and regulations, and that such departure worked to his prejudice to the end that he had been denied due process.

In a trial to the court the trial judge found that the defendants had indeed failed to follow their own rules and regulations, but that Hall was not prejudiced thereby, and that, hence, there had been no denial of due process. We agree with the trial judge that the defendants did not follow their own rules and regulations in ordering Hall to active duty in the United States Army. We disagree, however, with the trial judge in his conclusion that such did not work to Hall's prejudice. We believe such departure, at least as concerns one provision of Army Regulation 135–91, did work to Hall's prejudice.

AR 135–91 provides that whenever a member of a National Guard is absent from a scheduled drill, or, though present, has an unsatisfactory drill performance, he shall be denied credit for the drill and shall be given a so-called "letter of instruction" *prior* to the next scheduled drill. This regulation states that the letter of instruction should be "prepared locally," should outline the Guard member's obligation to participate satisfactorily, should state the number of his accrued absences, and should explain the implications of additional unexcused absences. In the instant case, in connection with two unsatisfactory drill performances, Hall was given such a letter of instruction, but *after*, and not *before*, his next scheduled drill. The trial judge found that because of this delay in transmitting the letter of instruction the defendants had not complied with their rules and regulations. However, the trial judge further concluded that under the circumstances of this case such did not work to Hall's prejudice, since he did receive such a letter of instruction *before* being absent from, or having an unsatisfactory performance at, a subsequent drill. We take no exception to the trial judge's conclusion in this particular matter.

AR 135–91 also provides that a Guard member who accumulates a total of five or more unexcused absences from scheduled unit training assemblies within a one-year period may be ordered to active duty. However, as we read AR 135–91, one who thus accumulates five or more unexcused absences is not *automatically* to be ordered to active duty. On the contrary, AR 135–91 requires the unit commander to first "determine if any cogent or emergency reasons existed which prevented the member from attending." If it be determined that there were no such "cogent or emergency reasons," then, and only then, as we understand it, may the unit commander forward a request to the appropriate area commander or State Adjutant General that the errant Guard member be ordered to active duty. The particular provision just referred to reads as follows:

"* * *.

"(2) If the absence(s) charged will result in a total accrual of five or more unexcused absences in a 1-year period, [the unit commander will] determine if any cogent or emergency reasons existed which prevented the member from attending. If no such reason existed, he will forward the member's Military Personnel Records Jacket to the appropriate area commander or State Adjutant General requesting that he be ordered to active duty as prescribed in a above. [24 months less active duty previously served]."

In the instant case it is agreed that the unit commander, who apparently was Chief Warrant Officer Merle D. Smith, made no investigation after Hall accumulated six unexcused absences to determine if there were any "cogent or emergency reasons" for Hall's unexcused absences from Guard drill. Nor did he later, before requesting Hall's activation, make a determination, either by personal investigation or otherwise, that there were no such "cogent or emergency reasons." On the contrary, he simply notified Hall by letter on December 8, 1971, that he was eligible for certification to active duty and then on January 3, 1972, sent forward through the chain of command a request that Hall be ordered to active duty for a period of nineteen months and twelve days.

The trial judge found that the defendants had not complied with the requirement that there be a determination by the unit commander as to whether there were "cogent or emergency reasons" for Hall's unexcused absences. With this we are in full accord. However, the trial judge concluded that there was no resulting prejudice to Hall because he was able to explain why he had missed the last four drill sessions in his various military appellate proceedings *after* the request that he be ordered to active duty had gone forward from his unit. Such, in our view, is not sufficient. Brief reference should be made to the background facts so that the entire matter may be viewed in context.

On April 24, 1971, Hall was denied credit for a drill assembly because his hair was too long. The letter of instruction required by AR 135–91 was not transmitted to him until May 25, 1971, which was subsequent to intervening drills. A two-day drill weekend was scheduled for August 7 and 8, 1971, which consisted of four drill periods, i.e., from 1:00 P. M. to 5:00 P. M., and from 6:00 P. M. to 10:00 P. M., on each day. At the first of these four drill periods, Hall was informed that his hair was again too long. Later, in that same drill period, Hall became involved in some sort of disorderly conduct, where it was observed that he, Hall, had been drinking, to the end that he was denied credit for that particular drill because of such conduct. He was given a letter of instruction in connection with this drill on the same day, August 7, but not till after the evening drill had commenced.

On November 6 and 7, 1971, Hall was absent from an entire two-day drill weekend, again consisting of four drill periods. This meant that Hall had by such absences accumulated six unexcused absences within a one-year period. Hall

was thereafter notified on December 8, 1971, that he had accrued six unexcused absences and that such "will result in induction for a period of twenty-four months * * *." Hall's unit commander made no investigation or check of any sort to determine why Hall had missed the drills held on November 6 and 7, 1971. Rather, he simply forwarded a request on January 3, 1972, that Hall be involuntarily activated into the United States Army. It was not until after this request had gone forward that Hall himself first took the initiative and advised the State Adjutant General by letter that the reason he missed the drill periods held on November 6 and 7, 1971, was that he was at the time experiencing extreme emotional disturbance caused by marital difficulties. His pleas in this regard, however, fell on deaf ears, and Hall, after following his appeal through all available military levels, was eventually ordered to active duty. This action followed.

■ In the trial court Hall attempted to show that his hair was not too long when he was denied credit for the drill held on April 24, 1971. The trial judge ruled that this was a matter peculiarly within the discretion of Hall's commanding officer and that the court lacked jurisdiction to direct the manner in which this discretion should be exercised. Similarly, the trial judge declined to inquire into whether Hall's conduct at the drill held on August 7, 1971, was or was not disorderly, holding again that this was a matter peculiarly within the discretion of the military. We agree with the trial court in both of these rulings. *See* Smith v. Resor, 406 F.2d 141 (2d Cir. 1969), where it was held that a decision as to what constitutes the correct appearance of a reservist is, absent extraordinary circumstances, within the discretion of the military and that the court would not review the validity of an officer's decision that the reservist must cut his hair for attendance at drills.

■ As mentioned earlier, the letters of instruction advising Hall that his performance at the drills held on April 24,

1971, and August 7, 1971, was unsatisfactory were not transmitted to Hall *prior* to the next scheduled drill, as required by AR 135–91. The trial court found such to be a violation of AR 135–91. The trial court further found, however, that such departure by the defendants from their rules and regulations did not work to Hall's prejudice. We agree. The real purpose of the letter of instruction according to AR 135–91 is to keep a Guard member advised as his absences, or unsatisfactory performances, accumulate, so that he can be fully apprised of his record *before* approaching the all-important fifth absence. This was accomplished in the instant case, as Hall was advised that he had two unexcused absences several months prior to the weekend of November 6 and 7, 1971, when in one weekend he jumped from two to six unexcused absences. So what occurred on November 6 and 7, 1971, and how the military handled it, is the crux of this case.

■ In our view it is quite clear that AR 135–91 requires that before a unit commander shall initiate a request that a Guard member who has five or more unexcused absences be ordered to active duty, the unit commander will first make a determination as to whether there was a good reason for the absences. We believe it to be implicit in AR 135–91 that if there be such a cogent reason, the request should not, at least as of that moment, go forward. If there be no such cogent reason for the absence, then, and only then, may there be a request that the errant Guardsman be activated. Hence, a discretion of considerable proportion is thus vested in the unit commander, and in the instant case this discretion was never exercised. Such was the finding of the trial court and with such we are in complete accord.

■ The trial court further found, however, that no prejudice resulted to Hall because of this failure of the unit commander to determine whether Hall had a good excuse for missing the drills held on November 6 and 7, 1971. The trial court's reasoning, as we understand

it, is that Hall was not prejudiced because he was *later* permitted to offer his excuse in the various military appellate reviews of the unit commander's request that Hall be placed on active duty. We do not believe this was a satisfactory substitute. The requirement that a unit commander make at least some sort of a check to determine if an absent Guard member had a cogent reason for his absence *before* any request for activation is initiated is not met by permitting the Guard member, *after* a request for activation has gone forward, to attempt to show, in this case by a letter, that he did in fact have cogent or emergency reasons for missing the Guard drills in question. The determination by the unit commander involves a contemporaneous on-the-scene check, made by one who presumably is personally acquainted with the Guard member and is in a real sense a condition precedent to any request for involuntary activation. Feeny v. Smith, 371 F.Supp. 319 (D.C. Utah 1973). After the request for activation has gone forward, any plea in mitigation becomes but a part of a cold record which is reviewed by one unacquainted with the individual involved and generally sitting in a faraway place. Frequently, and understandably, once a request of this nature goes forward, the die is cast.

Accordingly, we do not agree that Hall suffered no prejudice when his unit commander failed to determine whether Hall had cogent reasons for his absence from the drills held on November 6 and 7, 1971. If such determination had been timely made, perhaps the entire matter could have been resolved without the need for the drastic remedy of activation orders. In any event, the military admittedly failed to follow its own rules and regulations, and because of such violation Hall was foreclosed from perhaps preventing the activation request by showing that he had a cogent reason for absence from the November drills, i. e., his wife ordering him from his home and family. Whether such be in fact a cogent reason then could, and should, have been passed on by Hall's unit commander *before* the latter's activation request.

Courts are understandably reluctant to review discretionary orders of the military. Here, however, the military failed to exercise its discretion. Where the military has laid down its own rules and regulations, such rules and regulations cannot thereafter be ignored, and courts may examine an order that a Guard member be activated in order to ascertain whether the military's rules and regulations were violated in a manner resulting in substantial prejudice. In support of the foregoing, *see* United States ex rel. Sledjeski v. Commanding Officer, 478 F.2d 1147 (2d Cir. 1973); Konn v. Laird, 460 F.2d 1318 (7th Cir. 1972); Friedberg v. Resor, 453 F.2d 935 (2d Cir. 1971); Smith v. Resor, 406 F.2d 141 (2d Cir. 1969); Hammond v. Lenfest, 398 F.2d 705 (2d Cir. 1968); Feeny v. Smith, 371 F.Supp. 319 (D.C. Utah 1973); McSweeney v. United States, 338 F.Supp. 350 (N.D. Ohio 1971), and Caruso v. Toothaker, 331 F.Supp. 294 (N.D.Pa.1971).

In sum, then, the defendants in the instant case did not follow the provisions of AR 135–91 in ordering Hall to active duty and this violation of their own rules resulted in prejudice to Hall.

The judgment is reversed and the cause is remanded with directions that the trial court enter a judgment declaring that the order to active duty here involved is invalid, enjoining the defendants from further proceedings under such order, and reinstating Hall into the Kansas National Guard. K.S.A. 48–227.