**Application of Thomas M. WELLS, Petitioner,**

v.

**COMMANDER OF the 3RD BATTALION, 24TH MARINES, FMF, USMCR, NAVAL AND MARINE CORPS RESERVE CENTER, LAMBERT FIELD, ST. LOUIS, MISSOURI, and W. Graham Claytor, Jr., Secretary of the Navy, Respondents.**

No. 77–1173C(3).

United States District Court, E. D. Missouri, E. D.

Dec. 12, 1977.

Jonathan Isbell, Runge & Gumbel, P. C., Collinsville, Ill., Stanley Schechter, St. Louis, Mo., for petitioner.

Joseph B. Moore, Asst. U. S. Atty., U. S. Dept. of Justice, St. Louis, Mo., for respondents.

## MEMORANDUM

NANGLE, District Judge.

This matter is before the Court following a hearing held on November 11, 1977 upon petitioner's application for a preliminary injunction. Petitioner's request for a temporary restraining order had been granted on November 4, 1977.

Petitioner filed this application for a writ of habeas corpus contesting the validity of orders assigning petitioner to involuntary active duty, and further alleging that he was fraudulently induced to enter into a six year contract with the United States Marine Corps Reserves. The evidence adduced at the hearing establishes the following:

In 1976, petitioner was married and had one child. He was in serious financial straits and was unemployed. He went to a recruitment center, seeking to become a

regular in the United States Marine Corps. Because of his financial situation, however, he was ineligible for the regular service. The recruiter therefore suggested that petitioner join the Marine Corps Reserves. Petitioner told the recruiter that he had completed three years of Junior ROTC while in high school. On the basis of that information, petitioner was told that he would enter the Reserves as a private first class. Later documentation, however, indicated that petitioner had completed only two years of Junior ROTC and thus entitled to receive pay as a private only. Petitioner was told that his wife would receive an allotment of money while petitioner was in training and that his wife would receive an identification card entitling her to hospitalization and PX privileges during that period. Petitioner's wife did not receive the allotment, however, because petitioner never filled out the proper forms. The evidence indicated that even if petitioner had filled out the forms, his wife would not have received the allotment until the very end of petitioner's training because of processing delays. Petitioner's wife did receive her identification card but the card was not received until shortly before petitioner returned home from training.

On July 16, 1976, petitioner signed a statement of understanding which contained the following:

e. I will be required to attend drills and training periods as prescribed following my period of active duty for training and that failure to do so may result in my being ordered to active duty by the Commandant of the Marine Corps for a period of 2 years less any period of active duty or active duty for training I may have already served.

f. I understand that satisfactory participation consists of attendance at and satisfactory performance of 48 scheduled drills and not less than 14 days (exclusive of travel time) of active duty for training during each year of the 6 years of my enlistment with the unit to which attached.

Petitioner failed to attend drills on January 9, April 1, April 2, April 3, May 20, May 21, and May 22, 1977. Petitioner's Service Record indicates that he was counseled on February 8, 1977 regarding mandatory participation and his unexcused absence in January. Although petitioner was given an opportunity to make up the January absence, he did not do so.

On April 6, 1977, petitioner was sent a letter by registered mail advising him of his absence from drills on April 1, 2, and 3, 1977. This letter was sent by registered mail and was received by a member of petitioner's household. The letter informed petitioner of the absences on April 1, 2, and 3, 1977 and requested that petitioner meet with the Commanding Officer prepared to present evidence of excuse. The letter listed examples of circumstances excusing absences and explained the type of evidence necessary to sustain the excuse. The letter concluded by stating:

Should you not contact me as specified in paragraph 3 of this letter, I will have no choice but to declare your absence unexcused. This will cause you to be an unsatisfactory participant and I will recommend you for assignment to involuntary active duty.

Petitioner did not respond.

On May 26, 1977, petitioner was sent a letter by registered mail advising him that he was to be recommended for assignment to 45 days of active duty. This letter listed the dates and drills which petitioner failed to attend and further stated:

You have the right and are encouraged to submit a statement in your behalf in this matter. Your statement should include any hardship or medical problems that would preclude your assignment to involuntary active duty. Your statement must be received within 10 days after receipt of this letter or it will be considered that you have no statement to make. Any statement that you will make will be forwarded to the Director, 9th Marine Corps District (Code 32), as an enclosure to my recommendation for his consideration.

Petitioner made no statement and later received orders to report for active duty.

With the exception of January, 1977, petitioner does not dispute that he was absent for drills. Petitioner claims that he did not receive the May 26, 1977 letter of intent, although the same was received by a member of his household. When he received his orders to report for active duty, petitioner went to see Captain Robert Anderson, United States Marine Corps, and asked if there were anything petitioner could do to get out of the orders. Petitioner asked for a hardship discharge based upon his financial condition. Captain Anderson stated that in his opinion, petitioner would not get such a discharge because he did not meet the criteria. Petitioner took no further steps.

From the evidence adduced at the hearing, the Court finds that any misrepresentations concerning benefits that may have been made to petitioner did not affect petitioner's decision to join the Marine Corps Reserves. Petitioner was in serious debt and needed funds. The erroneous information supplied by petitioner concerning his Junior ROTC participation formed the basis of the recruiter's representation concerning petitioner's rank and pay scale. While petitioner may have been misled regarding the time in which benefits would be received, the Court finds that knowledge of the same would not have changed petitioner's decision to enlist. Petitioner made no effort to revoke his decision upon learning that receipt of the benefits would be delayed. The benefits were ultimately received. In light of petitioner's serious financial condition, the Court concludes that petitioner would have enlisted even knowing that receipt of his training allotment and his wife's identification card would be delayed.

■ In order to warrant entry of a preliminary injunction, petitioner must "make 'a clear showing of probable success and possible irreparable injury' ". *Dino De-Laurentiis Cinematografica, S.p.A. v. D–150, Inc.*, 366 F.2d 373 (2d Cir. 1966). As petitioner asserts herein the burden of establishing probable success is less where "the balance of hardships tips decidedly to-

ward plaintiff". *American Smelting and Refining Company v. Pennzoil United, Inc.*, 295 F.Supp. 149 (D.Del.1969). Nevertheless, petitioner must raise "questions going to the merits so serious, substantial, and difficult as to make them a fair ground for litigation and thus far more deliberate investigation". *Checker Motors Corporation v. Chrysler Corporation*, 405 F.2d 319 (2d Cir. 1969), *cert. denied*, 394 U.S. 999, 89 S.Ct. 1595, 22 L.Ed.2d 777 (1969); *American Smelting and Refining Company v. Pennzoil United, Inc., supra.*

■ The Court has not found petitioner's testimony with reference to the claim of fraudulent inducement to be credible. Under these circumstances, the Court must conclude that petitioner has not met his burden. While the balance of hardships does weigh in petitioner's favor, the Court is hesitant to conclude that there is any probability of success on the merits on the claim of fraudulent inducement.

■ Petitioner also contests the validity of his activation orders. While this Court's scope of review is limited where military decisions are involved, it is clear that the Court may review such decisions to insure that military regulations were followed. *White v. Callaway*, 501 F.2d 672 (5th Cir. 1974); *Jolicoeur v. Laird*, 462 F.2d 1234 (8th Cir. 1972).

■ Petitioner contends that he was not notified of his unsatisfactory participation after each absence, in contravention of regulations. See *Alston v. Schlesinger*, 368 F.Supp. 537 (D.Mass.1974), *aff'd*, 502 F.2d 1160 (1st Cir. 1974); *United States ex rel. Moravetz v. Resor*, 349 F.Supp. 1182 (D.Minn.1972). While petitioner was not notified after every absence, the record is clear that petitioner was notified by letter of his absences on April 1, 2, and 3, 1977. These absences were themselves sufficient to justify activation, and petitioner was so informed. See ¶¶ 3201 and 3001, MCRAMM. Thus, it is irrelevant that petitioner did not receive notification with regard to other absences. Additionally, the absences were not assessed because peti-

tioner performed unsatisfactorily at drills. He totally failed to attend the drills, and with the possible exception of the January, 1977 absence, does not dispute that he was absent. Under these circumstances, the importance of notification is diminished. The purpose of the notification is to allow the Reservist to be aware of absences on his record, and to enable him to correct any errors in the same and adjust his performance. Herein, petitioner knew that he was to attend drills, but chose to work overtime at his job instead. Under these circumstances, any failure to notify petitioner of absences was not prejudicial. See *Krussell v. Wilson*, No. G75–511CA (W.D.Mich.1977). Absent a showing of prejudice in connection with a failure to follow regulations, petitioner cannot prevail. *Smith v. Resor*, 406 F.2d 141 (2d Cir. 1969).

■ Petitioner also contends that the procedures, to be followed in recommending involuntary activation, were ignored. Paragraph 3300, MCRAMM, provides that:

A brief narrative on circumstances surrounding the recommendation [should be included with the recommendation]. The commanding officer should comment on any hardship or physical problem known or claimed, and on any allegation that the reservist may make in his statement.

Petitioner was given an opportunity to inform Captain Anderson of any hardship or physical problem. The letter sent to petitioner, informing him of Captain Anderson's intention to recommend activation provided in part:

You have the right and are encouraged to submit a statement in your behalf in this matter. Your statement should include any hardship or medical problems that would preclude your assignment to involuntary active duty. Your statement must be received within 10 days after receipt of this letter or it will be considered that you have no statement to make. Any statement that you make will be forwarded to the Director, 9th Marine Corps District (Code 32), as an enclosure to my recommendation for his consideration.

Petitioner did not respond. Accordingly, in the letter to the Director of the 9th Marine Corps District, Captain Anderson stated that "Private First Class WELLS has not provided a statement regarding this recommendation as advised in paragraph 4 of enclosure (4) [the letter of intent]". Under these circumstances, ¶ 3300 was not violated. See *Krussell v. Wilson, supra. United States ex rel. Sledjeski v. Commanding Officer, Armed Forces*, 478 F.2d 1147 (2d Cir. 1973) and *Hall v. Fry*, 509 F.2d 1105 (10th Cir. 1975) are distinguishable. In *United States ex rel. Sledjeski*, the recommendation was misleading on the issue of the commanding officer's knowledge of hardships or physical problems. In *Hall*, no opportunity at all was given to the reservist to inform the commanding officer of the same.

Petitioner complains that he should have been counseled and afforded the opportunity to request a hardship discharge, as set out in ¶ 3300–4(f)(1). That provision, however, applies only when the commanding officer is forwarding his recommendation for activation. Captain Anderson was not aware of any hardship at that time because petitioner had failed to inform Captain Anderson of any hardship claimed. When petitioner contacted Captain Anderson and asked about obtaining a discharge, the activation orders had already been issued and the provisions of ¶ 3300–4(f)(1) no longer applied.

■ Petitioner contends that the Marine Corps failed to follow ¶ 3300 in connection with the delivery of his orders to report to active duty. This paragraph requires that the orders be delivered in person if possible and only when the same is not possible may certified mail be used. In the instant case, no attempt was made to personally deliver the orders. Instead the orders were immediately sent by certified mail. The Court fails to see how petitioner was prejudiced thereby and accordingly concludes that any violation of ¶ 3300 does not warrant relief herein. *Smith v. Resor, supra.*

Petitioner argues that ¶ 3301 authorizes a delay in assignment to active duty where there is a severe or unusual hardship caused by activation. Petitioner contends that Captain Anderson was aware "that the petitioner would experience such a hardship if he was forced to activate on such notice [and yet] Capt. Anderson never informed the petitioner of his right to request such a delay". Assuming arguendo that there is a duty of notification, the evidence totally fails to establish that Captain Anderson was aware of such a hardship. Paragraph 3301 states in part:

Except for bona fide emergency situations, to include temporary illness or incapacitation as the result of an injury, no reservist will be authorized delay once his active duty orders have been published.

Listed in the paragraph are reasons which may authorize a delay. These are seasonable employment, initial employment, federal/state examinations, employment as a teacher, student status, emergency reasons (which include serious illness, injury or death of family members), and temporary illness or injury. Petitioner's sole basis for asserting the necessity for delay was his financial condition. It would seem therefore that Captain Anderson was not informed of such a hardship as would warrant a delay in activation. Captain Anderson informed petitioner that he did not meet the criteria in Anderson's opinion and petitioner pursued it no further.

Petitioner contends that he was given insufficient time to report for active duty. There were only nine days between the time that petitioner received the orders and the date on which he was to report. In support of this argument, petitioner cites 10 U.S.C. § 672(e) which states that a reasonable time should be allowed "when a Reserve ordered to active duty, (other than for training) is alerted for that duty and the date when he is required to enter upon the duty". The obvious answer to this is that petitioner was ordered to report for training and thus the statute does not apply. 10 U.S.C. § 673a; *cf., O'Mara v. Zebrowski*, 447 F.2d 1085 (3d Cir. 1971). See also *Fox v. Brown*, 402 F.2d 837 (2d Cir. 1968), *cert.*

*denied*, 394 U.S. 938, 89 S.Ct. 1219, 22 L.Ed.2d 471 (1969) in which the court held that petitioner was "alerted" for active duty when the letter of intent to recommend for active duty was received.

On the basis of the record herein, the Court must conclude that petitioner has not sustained the requisite burden to justify entry of a preliminary injunction. While the balance of hardships does tip in petitioner's favor, the Court concludes that petitioner has not established any probability of success on the merits and has not raised sufficiently serious questions on the merits. Accordingly, the Court will deny the application for preliminary injunction and dissolve the temporary restraining order.